UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

05-60010

CASE NO. CR-MARRA

MAGISTRATE JUDGE
SELTZER

8 U.S.C. § 1324(a)(1)(A)(ii), (iii) & (iv)
8 U.S.C. § 1324(a)(1)(B)(i)
18 U.S.C. § 2
18 U.S.C. § 371
18 U.S.C. § 1001
18 U.S.C. § 1341
18 U.S.C. § 1343
18 U.S.C. § 1546(a)
18 U.S.C. § 1956(a)(1)(A)(i)
18 U.S.C. § 1956(h)
26 U.S.C. § 7201
18 U.S.C. § 982(a)(1)
18 U.S.C. § 981(a)(1)(c)
18 U.S.C. § 982(a)(2)(A)
18 U.S.C. § 982(a)(2)(A)(i)
18 U.S.C. § 982(a)(6)(A)(ii)(I)
18 U.S.C. § 982(a)(6)(A)(ii)(II)

FILED by _____ D.C.

JAN 13 2005

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

UNITED STATES OF AMERICA,
          Plaintiff

v.

**JAROSLAW SAWCZUK,**
          a/k/a
          Jerry Sawczuk,
**ANDOR PIKALI,**
          a/k/a
          Andy Pikali,
**JOZEF BOGACKI,**
**IVAN KANIS,**
**LUCIA KANIS,**
          a/k/a
          Lucia Kanisova, and
**PAVEL PREUS,**
          a/k/a
          Pavel Preuss,
          Paul Preuss,
          Pawel Preuss,

3
AT

Paul Preus,
Poul Preus,
Pawel Preus,

               Defendants.

_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At times material to this Indictment:

1.      Laws and regulations of the United States provided that citizens of the Czech Republic, the Slovak Republic, Hungary, the Republic of Poland and other nations could be granted status as non-immigrant visitors so they could temporarily visit the United States on visas, which did not allow the aliens to obtain employment in and reside and remain in the United States beyond their authorized visits.

2.      Laws and regulations of the United States required each non-immigrant visitor to depart the United States at the expiration of his or her authorized period of admission.

3.      The Internal Revenue Service ("IRS") was an agency within the United States Department of Treasury.

4.      The Immigration and Naturalization Service ("INS") was an agency within the Department of Justice, and later became part of the U.S. Department of Homeland Security ("DHS"); its criminal investigative arm is now known as the Bureau of Immigration and Customs Enforcement ("ICE").

5.      The United States Department of Labor, Department of Justice, Department of

Treasury and Department of Homeland Security were part of the executive branch of the Government of the United States.

6.     The term "payroll taxes" includes federal withholding income taxes, Social Security taxes, Medicare taxes, and federal unemployment taxes.

7.     FHF Commercial Services Corporation, incorporated in the State of Florida on or about June 3, 1998, and located at 2900 University Drive, Coral Springs, Florida, was controlled by defendants **JAROSLAW SAWCZUK** and **ANDOR PIKALI**.

8.     FHF Management & Commercial Services Corporation, incorporated in the State of Florida on or about July 19, 1999, located at 2900 University Drive, Coral Springs, Florida, was controlled by defendants **JAROSLAW SAWCZUK** and **ANDOR PIKALI**.

9.     J.A.J. Express Management Corporation, incorporated in the State of Florida on or about March 25, 1998, and located at 1616 Gulf to Bay Boulevard, Clearwater, Florida, was controlled by defendants **JOZEF BOGACKI**, **JAROSLAW SAWCZUK** and **ANDOR PIKALI**.

10.     J & K Express Services Corporation, incorporated in the State of Florida on or about June 15, 1998, and located at 1440 Coral Ridge Drive, Coral Springs, Florida, was controlled by defendants **IVAN KANIS** and **LUCIA KANIS**.

11.     J&K Professional Services Corporation, incorporated in the State of Florida on or about September 23, 1999, and located at 9629 Westview Drive, Coral Springs, Florida, was controlled by defendants **IVAN KANIS** and **LUCIA KANIS**.

12.     N. S. Management Corporation of USA, Inc., incorporated in the State of Florida on or about March 24, 2000, located at 2519 McMullen Booth Road, Clearwater, Florida, was controlled by defendants **JOZEF BOGACKI**, **JAROSLAW SAWCZUK**, and **ANDOR PIKALI**.

13.     Professional Services Group of USA Corporation (d/b/a Professional Services Corp.), located at 1497 Main Street, Dunedin, Florida, was controlled by defendants **JOZEF BOGACKI**, **JAROSLAW SAWCZUK**, and **ANDOR PIKALI**.

14.     S & S Commercial Services Corporation, incorporated in the State of Florida on or about October 20, 2000, located at 4474 Weston Road, Davie, Florida, was controlled by defendants **LUCIA KANIS** and **PAVEL PREUS**.

15.     S & V Commercial Services Corporation, incorporated in the State of Florida on or about June 12, 2000, located at 15841 Pines Boulevard, Pembroke Pines, Florida, was controlled by defendant **PAVEL PREUS**.

16.     TGA Business Management Corporation, incorporated in the State of Florida on or about April 23, 1998, located at 2855 University Drive, Coral Springs, Florida, was controlled by defendants **JAROSLAW SAWCZUK** and **ANDOR PIKALI**.

17.     FHF Commercial Services Corporation, FHF Management & Commercial Services Corporation, J.A.J. Express Management Corporation, J&K Express Services Corporation, J&K Professional Services Corporation, N.S. Management Corporation of USA, Inc., Professional Services Group of USA Corporation (d/b/a Professional Services Corp.), S&S Commercial Services Corporation, S&V Commercial Services Corporation, and TGA Business Management Corporation were "employee leasing" companies that is, companies that engaged in the business of supplying employees or workers for their client businesses. Through written contracts and oral agreements, these employee leasing companies would agree to in some contracts supply legally documented workers, and would collect and pay all payroll-related taxes pertaining to the workers. The employee leasing companies agreed to comply with all federal and state laws, including but not limited to workers'

4

compensation law and tax law, and, in some contracts, immigration law.

## COUNT 1-CONSPIRACY

18.     The General Allegations set forth above in paragraphs numbered 1 through

17 of this Indictment are re-alleged and expressly incorporated herein as if set out in full.

19.     Beginning as early as 1995, and continuing until on or about the date of this

Indictment, in Broward County, in the Southern District of Florida and elsewhere, the defendants,

**JAROSLAW SAWCZUK,**
a/k/a
**Jerry Sawczuk,**
**ANDOR PIKALI,**
a/k/a
**Andy Pikali,**
**JOZEF  BOGACKI,**
**IVAN KANIS,**
**LUCIA KANIS,**
a/k/a
**Lucia Kanisova,** and
**PAVEL PREUS,**
a/k/a
**Pavel Preuss,**
**Paul Preuss,**
**Pawel Preuss,**
**Paul Preus,**
**Poul Preus,** and
**Pawel Preus,**

did knowingly, willfully and unlawfully combine, conspire, confederate and agree with each other and

with others known and unknown to the Grand Jury, to commit offenses against the United States,

namely:

        a.     to knowingly and in reckless disregard of the fact that an alien had come to,

entered, and remained in the United States in violation of law, transport and

move, and attempt to transport and move such alien within the United States

5

by means of transportation and otherwise, in furtherance of such violation of law for the purpose of commercial advantage and private financial gain, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(i);

b.    to knowingly and in reckless disregard of the fact that an alien had come to, entered, and remained in the United States in violation of law, conceal, harbor, and shield from detection, and attempt to conceal, harbor, and shield from detection, such alien in any place, including any building and any means of transportation, for the purpose of commercial advantage and private financial gain, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and 1324(a)(1)(B)(i);

c.    to knowingly encourage and induce an alien to come to, enter, and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry, and residence was and would be in violation of law, for the purpose of commercial advantage and private financial gain, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iv) and 1324(a)(1)(B)(i);

d.    to knowingly and willfully, in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, the United States Department of Labor, make and cause to be made materially false, fictitious and fraudulent statements and representations, in violation of Title 18, United States Code, Section 1001;

e.    to knowingly and intentionally devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent

6

pretenses, representations and promises, and for the purpose of executing such scheme and artifice, and attempting to do so, to cause to be delivered by the United States Postal Service and commercial interstate carrier, according to the directions thereon, certain matters and things, in violation of Title 18, United States Code, Section 1341;

f. to knowingly and intentionally devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice to transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343; and

g. to knowingly cause to be uttered, used, attempted to be used, possessed, obtained, accepted, and received documents prescribed by statute and regulation for entry into and as evidence of authorized stay and employment in the United States, knowing such documents to have been altered and falsely made, in violation of Title 18, United States Code, Section 1546(a).

## OBJECT OF THE CONSPIRACY

20. It was the purpose and object of the conspiracy for the defendants unjustly to enrich themselves by charging various companies in the United States, hereinafter referred to as "client businesses," for the leasing of workers that defendants falsely represented to be legally employable, when in truth and in fact, as the defendants well knew, the workers were neither authorized to remain nor to work in the United States, and by further falsely representing that the defendants were

collecting all payroll taxes, including Social Security, federal withholding income tax, federal unemployment tax, and Medicare taxes and providing workers' compensation insurance for the employees.

## MANNER AND MEANS

The manner and means by which the defendants sought to accomplish the object of the conspiracy included, among other things, the following:

21.     The defendants set up and caused to be set up entities to act as employee leasing companies in the State of Florida, including but not limited to FHF Commercial Services Corporation, FHF Management & Commercial Services Corporation, J.A.J. Express Management Corporation, J&K Express Services Corporation, J&K Professional Services Corporation, N.S. Management Corporation of USA, Inc., Professional Services Group of USA Corporation (d/b/a Professional Services Corp.), S&S Commercial Services Corporation, S&V Commercial Services Corporation, and TGA Business Management Corporation.

22.     The defendants through their employee leasing companies agreed in their contracts and oral agreements to provide legally documented workers permitted to be employed in the United States to business clients in the United States.  The business clients contractually agreed to pay the employee leasing company at a special rate per hour for each employee. Among other promises, the employee leasing companies agreed in the contracts and oral agreements to be responsible to:

        a.     pay the employee;

        b.     deduct federal withholding income taxes;

        c.     deduct Social Security taxes;

        d.     deduct Medicare taxes;

8

    e.    deduct federal unemployment taxes;

    f.    provide workers' compensation insurance for each employee; and

    g.    collect, account for and pay the payroll taxes to the U.S. Treasury as required by law;

    h.    and in some contracts comply with immigration laws relevant to employment eligibility.

23.    The business clients paid the wages of the alien employees directly to the employee leasing companies as required under the contract.

24.    The defendants through their employee leasing companies either did not obtain workers' compensation insurance as required or fraudulently obtained such coverage by intentionally misrepresenting to the insurance carriers the numbers and classifications of employees to be covered.

25.    The defendants and their employee leasing companies failed to deduct as required the payroll taxes from the alien employees' wages as required under the contracts and agreements.

26.    The defendants unlawfully kept the payroll taxes of the alien workers and employers' contribution share of payroll taxes.

27.    The defendants set up and caused to be set up bank accounts including, but not limited to, the following accounts through which the defendants and the employee leasing companies received payments:

| Account Name | Bank Account |
| --- | --- |
| FHF Management & Commercial Services Corporation | Bank of America Account #3060919879 |
| FHF Commercial Services Corporation | Bank of America Account #3660824296 |
| TGA Business Management Corporation | Bank of America Account #3660752229 |
| S&V Commercial Services Corporation | Bank of America Account #5480472842 |

9

| Account Name | Bank Account |
|---|---|
| S&S Commercial Services Corporation | Bank of America Account #3437024562 |
| J.A.J. Express Management Corporation | First Union Account #2000006917263 |
| S&S Commercial Services Corporation | Southtrust Account #66115725 |
| J&K Professional Services Corporation | Southtrust Account #62916540 |
| Quest United | Bank of America Account #683447501 |
| JWA Professional Services Corporation | Bank of America Account #3064258109 |
| JWA Professional Services Corporation | Bank of America Account #3444459133 |
| Pates Service Union | Branch, Bank & Trust Account #5213875541 |
| Quest Union Corporation | Branch, Bank & Trust Account #5214583005 |
| Quest Union Service Corporation | Branch, Bank & Trust Account #5217297178 |
| J&K Express Services Corporation | Bank of America Account #3661062581 |
| Farmax | First Union Account #8617026643 |

28.     The defendants **LUCIA KANIS, IVAN KANIS** and **JOZEF BOGACKI** each wrote corporate checks made payable individually to defendants **JAROSLAW SAWCZUK, ANDOR PIKALI** and **PAVEL PREUS**.

29.     The defendants **JAROSLAW SAWCZUK, ANDOR PIKALI, JOZEF BOGACKI, IVAN  KANIS, LUCIA KANIS**, and **PAVEL PREUS** employed and caused to be employed in excess of five-hundred-and-fifty (550) unauthorized alien workers to be leased to their business clients in cities including but not limited to:

          a.      Dothan, Alabama
          b.      Danville, Arkansas
          c.      LeMars, Iowa
          d.      Abilene, Kansas
          e.      Seneca, Kansas
          f.      Guthrie, Kentucky
          g.      Mermentau, Louisiana
          h.      Goldsboro, North Carolina
          i.      Rose Hill, North Carolina
          j.      Bethune, South Carolina, and
          k.      Watertown, South Dakota.

30.     The defendants, **JAROSLAW SAWCZUK, ANDOR PIKALI, JOZEF**

**BOGACKI, IVAN KANIS, LUCIA KANIS** and **PAVEL PREUS**, collected payments from the

business clients in the amount of approximately $33,000,000.00 on behalf of the alien workers and

paid approximately $24,000,000.00 in wages to alien workers.

**OVERT ACTS**

31.     In furtherance of the conspiracy and to effect the objects thereof, one or more of

the conspirators committed and caused to be committed at least one of the following overt acts,

among others, in Broward County, in the Southern District of Florida and elsewhere:

A.   CAL-MAINE FOODS, INC.

     1.    On or about March 28, 2000, defendants **IVAN KANIS** and **LUCIA**

     **KANIS** caused Coral Financial Group of Coral Springs, Florida, to fax an

     Acord Certificate to Cal-Maine Foods, Inc., in Guthrie, Kentucky.

     2.    On or about April 14, 2000, defendants **IVAN KANIS** and **LUCIA**

     **KANIS** caused J&K Professional Services Corporation to sign a contract

     with Cal-Maine Foods, Inc., in Guthrie, Kentucky, to provide leased

     employees.

     3.    On or about May 2, 2000, defendants **IVAN KANIS** and **LUCIA KANIS**

     caused Cal-Maine Foods, Inc., in Guthrie, Kentucky, to mail check

     #2054259 in the amount of $2,907.50 to J&K Professional Services

     Corporation in Fort Lauderdale, Florida.

     4.    On or about November 16, 2000, defendants **IVAN KANIS** and **LUCIA**

     **KANIS** caused a facsimile to be sent from Coral Financial Group, Coral

     Springs, Florida, telephone number (954) 345-2614, to Cal-Maine Foods,

11

Inc., in Guthrie, Kentucky, telephone number 270-483-2059.

5.     On  or about January 4, 2001, defendants **IVAN KANIS** and **LUCIA KANIS** caused Cal-Maine Foods, Inc., in Guthrie, Kentucky, to mail check #442 in the amount of $6,841.74 to J&K Professional Services Corporation in Fort Lauderdale, Florida.

6.     On or about May 4, 2001, defendants **LUCIA KANIS** and **PAVEL PREUS**  caused Coral Financial Group in Coral Springs, Florida, to send a facsimile to Cal-Maine Foods, Inc., in Guthrie, Kentucky.

7.     On or about October 15, 2001, defendant **PAVEL PREUS** signed a contract on behalf of S&S Commercial Services Corporation with Cal-Maine Foods, Inc., in Shady Dale, Georgia to provide leased employees.

8.     On or about October 23, 2001, defendant **PAVEL PREUS** caused Cal-Maine Foods, Inc., to mail check #39881 in the amount of $5,985.19 to S&S Commercial Services Corporation in Davie, Florida.

9.     On or about November 23, 2001, defendant **PAVEL PREUS** caused Cal-Maine Foods, Inc., to mail check #43899 in the amount of $7,853.64 to S&S Commercial Services Corporation in Davie, Florida.

10.     On or about November 29, 2001, defendant **PAVEL PREUS** caused Coral Financial Group to send a facsimile from Coral Springs, Florida, telephone number 954-345-2614 to Cal-Maine Foods, Inc., in Guthrie, Kentucky, telephone number 270-483-2059.

11.     On or about January 25, 2002, defendant **PAVEL PREUS** caused Coral Financial Group in Coral Springs, Florida to send a facsimile to Cal-Maine

Foods, Inc., in Bethune, South Carolina.

12.     On or about March 4, 2002, defendant **PAVEL PREUS** caused Cal-Maine

Foods, Inc., in Jackson, Mississippi, to mail check #56743 in the amount of

$10,781.45 to S&S Commercial Services Corporation in Davie, Florida.

13.     On or about April 22, 2002, defendant **PAVEL PREUS** caused Coral

Financial Group in Coral Springs, Florida to send a facsimile to Cal-Maine

Foods, Inc., in Pine Grove, Louisiana.

14.     On or about May 3, 2002, defendant **PAVEL PREUS** caused S&S

Commercial Services Corporation to sign a contract with Cal-Maine Foods,

Inc., in Bethune, South Carolina to provide leased employees.

15.     On or about July 5, 2002, defendant **PAVEL PREUS** caused Cal-Maine

Foods, Inc., in Jackson, Mississippi, to mail check #8618 in the amount of

$13,358.03 to S&S Commercial Services Corporation in Davie, Florida.

16.     On or about July 25, 2002, defendant **PAVEL PREUS** caused Cal-Maine

Foods, Inc., in Jackson, Mississippi, to mail check #11134 in the amount of

$17,441.79 to S&S Commercial Services Corporation in Davie, Florida.

B.     <u>DUCKWALL-ALCO, INC.</u>

1.     In or about November 2000, defendant **ANDOR PIKALI** met with an

official of Duckwall-Alco, Inc., in Abilene, Kansas.

2.     On or about November 29, 2000, defendants **ANDOR PIKALI**,

**JAROSLAW SAWCZUK**, and **JOZEF BOGACKI** caused Duckwall-

Alco, Inc., in Abilene, Kansas, to enter into an "Employee Lease

Agreement" with N.S. Management Corporation of USA, Inc., of

13

Clearwater, Florida.

3.      On or about January 18, 2001, defendants **ANDOR PIKALI,**
**JAROSLAW SAWCZUK,** and **JOZEF BOGACKI** caused an on-site
supervisor to travel to Abilene, Kansas, to supervise the N.S. Management
Corporation of USA, Inc. employees leased to Duckwall-Alco, Inc.

4.      On or about April 2001, defendants **ANDOR PIKALI, JAROSLAW**
**SAWCZUK,** and **JOZEF BOGACKI** caused another on-site supervisor to
oversee the N.S. Management Corporation of USA, Inc. employees leased
to Duckwall-Alco, Inc.

5.      On or about October 4, 2001, defendants **JOZEF  BOGACKI, ANDOR**
**PIKALI,** and **JAROSLAW SAWCZUK** caused N.S. Management
Corporation of USA, Inc. to submit falsified payroll summaries to the U.S.
Department of Labor, Wage and Hour Division, for leased employees
working at Duckwall-Alco, Inc.

6.      On or about March 8, 2002, defendants **ANDOR PIKALI, JAROSLAW**
**SAWCZUK** and **JOZEF BOGACKI** caused N.S. Management
Corporation of USA, Inc. to employ approximately 65 undocumented aliens
at Duckwall-Alco, Inc.

C.   FAIRVIEW MILLS, INC.

1.      In or about August, 1998, defendants **IVAN KANIS** and **ANDOR**
**PIKALI** met with an official of Fairview Mills, Inc., in Seneca, Kansas.

2.      On or about October 4, 1999,  defendants **IVAN  KANIS, LUCIA**

14

KANIS, ANDOR PIKALI, and JAROSLAW SAWCZUK caused J&K

Professional Services Corporation to fax a letter from TGA Business

Management Corporation in Coral Springs, Florida to Fairview Mills, Inc.,

in Seneca, Kansas, explaining that J&K Express Services Corporation had

become J&K Professional Services Corporation.

3.    On or about December 7, 1999, defendants **IVAN KANIS** and **LUCIA**

**KANIS** caused  Fairview Mills, Inc., in Seneca, Kansas, to mail check

#1078 in the amount of $4,771.72  to J&K Professional Services

Corporation in Coral Springs, Florida.

4.    On or about January 10, 2000, defendants **IVAN KANIS and LUCIA**

**KANIS** caused a facsimile to be sent from Coral Springs, Florida,

telephone number 954-345-2614,  to Fairview Mills, Inc., in Seneca,

Kansas, telephone number 785-336-6720.

5.    On or about January 18, 2000,  defendants **IVAN KANIS** and **LUCIA**

**KANIS** caused Fairview Mills, Inc., in Seneca, Kansas, to mail check

#1186 in the amount of $5,000.49 to J&K Professional Services

Corporation in Coral Springs, Florida.

6.    On or about March 16, 2000, defendants **IVAN KANIS** and **LUCIA**

**KANIS** caused Fairview Mills, Inc., to mail check #1328 in the amount of

$5,673.00 to J&K Professional Services Corporation in Coral Springs,

Florida.

7.    On or about March 28, 2000, defendants **IVAN KANIS** and **LUCIA**

**KANIS** caused Fairview Mills, Inc., in Seneca, Kansas, to mail check #1378 in the amount of $5,830.83 to J&K Professional Services Corporation in Coral Springs, Florida.

8.       On or about January 24, 2001, defendants **IVAN KANIS** and **LUCIA KANIS** caused a  facsimile to be sent from J&K Professional Services in Coral Springs, Florida, to Fairview Mills, Inc., in Seneca, Kansas.

9.       On or about June 5, 2001, defendant **PAVEL PREUS** caused a facsimile to be sent from Coral Springs, Florida, to Fairview Mills, Inc., in Seneca, Kansas.

10.      On or about June 15, 2001, defendants **IVAN KANIS, LUCIA KANIS,** and **PAVEL PREUS** caused S&V Commercial Services Corporation of Pembroke Pines, Florida, to assume the Fairview Mills, Inc., Seneca, Kansas contract of J&K Professional Services Corporation of Coral Springs, Florida.

11.      On or about June 27, 2002, defendant **PAVEL PREUS** caused Fairview Mills, Inc., in Seneca, Kansas, to mail check #2824 in the amount of $5,604.39 to S&V Commercial Services Corporation in Coral Springs, Florida.

12.      On or about October 31, 2002, defendant **PAVEL PREUS** caused Fairview Mills, Inc., in Seneca, Kansas, to mail check #3127 in the amount of $9,124.83 to S&V Commercial Services Corporation in Coral Springs, Florida.

16

13.     On or about November 29, 2002, defendant **PAVEL PREUS** caused

Fairview Mills, Inc., in Seneca, Kansas, to mail check #3189 in the amount

of $9,625.38 to S&V Commercial Services Corporation in Coral Springs,

Florida.

14.     On or about January 29, 2003, defendant **PAVEL PREUS** caused to be

submitted to the U.S. Department of Labor a false payroll summary from

S&V Commercial Services Corporation.

15.     On May 29, 2003, defendant **PAVEL PREUS** caused S&V Commercial

Services Corporation to employ eight undocumented aliens at Fairview

Mills, Inc. in Seneca, Kansas.

D.     FLAVOR HOUSE PRODUCTS, INC.

1.     On or about September 16, 1999, defendants **IVAN  KANIS** and **LUCIA**

**KANIS** caused J&K Express Services Corporation to enter into an

"Employee Lease Agreement" contract with Flavor House Products, Inc., in

Dothan, Alabama.

2.     On or about October 29, 1999,  defendants **IVAN KANIS** and **LUCIA**

**KANIS** caused Flavor House Products, Inc., to mail check # 19307 in the

amount of $3,508.42 to J&K Professional Services in Coral Springs,

Florida.

3.     On or about November 8, 1999, defendants **IVAN KANIS** and **LUCIA**

**KANIS** caused Flavor House Products, Inc., to mail check # 19506 in the

amount of $3,621.60 to J&K Professional Services in Coral Springs,

Florida.

4.    On or about December 16, 1999, defendants **IVAN KANIS** and **LUCIA KANIS** caused Flavor House Products, Inc., to mail check #20829 in the amount of $17,166.97 to J&K Professional Services in Coral Springs, Florida.

5.    On or about December 23, 1999, defendants **IVAN KANIS** and **LUCIA KANIS** caused Flavor House Products, Inc., to mail check #21052 in the amount of $9,957 to J&K Professional Services in Coral Springs, Florida.

6.    On or about May 4, 2001, defendants **LUCIA KANIS** and **PAVEL PREUS**  caused Coral Financial Group in Coral Springs, Florida, to send a facsimile to Flavor House Products, Inc., in Dothan, Alabama.

E.    <u>MERMENTAU RICE, INC.</u>

1.    On or about January 3, 2002, defendant **PAVEL PREUS** met with an official of Mermentau Rice, Inc., in Mermentau, Louisiana.

2.    On or about January 7, 2002, defendant **PAVEL PREUS** caused a facsimile to be sent from Coral Springs, Florida, telephone number 954-340-4028, to Mermentau Rice, Inc., in Mermentau, Louisiana, telephone number 337-824-5180.

3.    On or about January 9, 2002, defendant **PAVEL PREUS** caused S&V Commercial Services Corporation to sign a contract with Mermentau Rice, Inc., in Mermentau, Louisiana, to provide leased employees.

4.    On or about January 16, 2002, defendant **PAVEL PREUS** caused

18

Mermentau Rice, Inc., in Mermentau, Louisiana, to mail check #19397 in the amount of $2,743.79 to S&V Commercial Services Corporation in Coral Springs, Florida.

5.    On or about January 24, 2002, defendant **PAVEL PREUS** caused Mermentau Rice, Inc., in Mermentau, Louisiana, to mail check #19564 in the amount of $4,534.34 to S&V Commercial Services Corporation in Coral Springs, Florida.

6.    On or about January 31, 2002, defendant **PAVEL PREUS** caused Mermentau Rice, Inc., in Mermentau, Louisiana, to mail check #19604 in the amount of $3,808.80 to S&V Commercial Services Corporation in Coral Springs, Florida.

7.    On or about February 5, 2002, defendant **PAVEL PREUS** caused S&V Commercial Services Corporation to employ approximately 22 illegal aliens at Mermentau Rice, Inc., in Mermentau, Louisiana.

F.    <u>MURPHY FARMS, INC./ MURPHY FAMILY FARMS, INC.</u>

1.    In or about 1999, defendant **JAROSLAW SAWCZUK** met with an official of Murphy Family Farms, Inc., in Rose Hill, North Carolina.

2.    On or about January 6, 1999, defendants **JAROSLAW SAWCZUK** and **ANDOR PIKALI** caused Murphy Family Farms, Inc., to electronically transfer approximately $80,639.88 to FHF Commercial Services Corporation in Coral Springs, Florida.

3.    On or about August 4, 1999, defendants **JAROSLAW SAWCZUK** and

ANDOR PIKALI caused Murphy Family Farms, Inc., to electronically transfer $94,943.93 to FHF Commercial Services Corporation in Coral Springs, Florida.

4.      On or about September 21, 1999, defendant ANDOR PIKALI signed a fax letter on behalf of FHF Management and Commercial Services Corporation with Murphy Farms, Inc., in Rose Hill, North Carolina, to provide leased employees.

5.      On or about November 3, 1999,  defendants JAROSLAW SAWCZUK and ANDOR PIKALI caused Murphy Family Farms, Inc., to electronically transfer approximately $99,219.88 to FHF Management & Commercial Services Corporation in Coral Springs, Florida.

6.      On or about May 4, 2000, defendants JAROSLAW SAWCZUK and ANDOR PIKALI caused Murphy Family Farms, Inc., to electronically transfer approximately $80,639.88 to FHF Management & Commercial Services Corporation in Coral Springs, Florida.

7.      On or about May 2, 2001, defendants JAROSLAW SAWCZUK and ANDOR PIKALI caused Murphy Family Farms, Inc. to electronically transfer approximately $205,863.06 to FHF Management & Commercial Services Corporation in Coral Springs, Florida.

8.      On or about May 29, 2002, defendants JAROSLAW SAWCZUK and ANDOR PIKALI caused FHF Management and Commercial Services in Coral Springs, Florida, to send a facsimile to Murphy Farms in Rose Hill,

North Carolina.

G.    OAK VALLEY FARMS, INC.

1.    On or about July 12, 1999, defendant **JAROSLAW SAWCZUK** caused TGA Business Management Corporation to enter into a contract to provide leased employees to Oak Valley Farms, Inc. in Watertown, South Dakota.

2.    On or about August 18, 1999, defendants **JAROSLAW SAWCZUK** and **ANDOR PIKALI** caused Oak Valley Farms, Inc., in Watertown, South Dakota, to mail check #18886 in the amount of $5,060.35 to TGA Business Management Corporation in Coral Springs, Florida.

3.    On or about November 29, 1999, defendants **JAROSLAW SAWCZUK** and **ANDOR PIKALI** caused Oak Valley Farms, Inc., in Watertown, South Dakota, to mail check #19233 in the amount of $7,754.39 to TGA Business Management Corporation in Coral Springs, Florida.

4.    On or about December 16, 1999, defendants **JAROSLAW SAWCZUK** and **ANDOR PIKALI** caused Oak Valley Farms, Inc., in Watertown, South Dakota, to mail check #19315 in the amount of $7,954.44 to TGA Business Management Corporation in Coral Springs, Florida.

5.    On or about July 26, 2000, defendant **JAROSLAW SAWCZUK** signed a contract on behalf of TGA Business Management Corporation with Oak Valley Farms, Inc., in Watertown, South Dakota to provide leased employees.

6.    On or about August 9, 2000, defendants **JAROSLAW SAWCZUK** and

**ANDOR PIKALI** caused Berens & Tate, P.C., in Omaha, Nebraska to mail a letter and contract to TGA Business Management Corporation in Coral Springs, Florida.

7.      On or about September 29, 2000, defendants **JAROSLAW SAWCZUK** and **ANDOR PIKALI** caused Oak Valley Farms, Inc., in Watertown, South Dakota, to mail check #100879 in the amount of $7,145.42 to TGA Business Management Corporation in Coral Springs, Florida.

8.      On or about January 3, 2001, defendants **JAROSLAW SAWCZUK** and **ANDOR PIKALI** caused Oak Valley Farms, Inc. to mail check #101132 in the amount of $7,368.04 to TGA Business Management Corporation in Coral Springs, Florida.

H.   PERDUE FARMS, INC.

1.      In or about 1998, defendant **IVAN KANIS** met with an official of Perdue Farms, Inc., in Beaver Dam, Kentucky.

2.      In or about March 2000, defendants **LUCIA KANIS, IVAN KANIS**, and **ANDOR PIKALI** met with an official of Perdue Farms, Inc., in Dillon, South Carolina.

3.      On or about June 27, 2000, defendants **IVAN KANIS** and **LUCIA KANIS** caused  J&K Professional Services Corp to mail a letter from Fort Lauderdale, Florida to Perdue Farms, inc., in Dothan, Alabama.

4.      On or about October 2, 2000, defendant **IVAN KANIS** met with an official of Perdue Farms, Inc., in Dillon, South Carolina.

22

5.     On or about November 16, 2000, defendants **IVAN KANIS** and **LUCIA KANIS** caused a facsimile to be sent from Coral Springs, Florida, telephone number 954-345-2614, to Perdue Farms, Inc., in Beaver Dam, Kentucky, telephone number 270-274-6022.

6.     On or about November 16, 2000, defendants **IVAN KANIS** and **LUCIA KANIS** caused  a facsimile to be sent from Coral Springs, Florida, telephone number 954-345-2614, to Perdue Farms, Inc., in Dothan, Alabama, telephone number 334-702-6203.

7.     On or about November 16, 2000,  defendants **IVAN KANIS** and **LUCIA KANIS** caused a  facsimile to be sent from Coral Springs, Florida, telephone number 954-345-2614, to Perdue Farms, Inc., in Accomac, Virginia, telephone number 757-787-5341.

8.     On or about November 16, 2000,  defendants **IVAN KANIS** and **LUCIA KANIS**  caused Coral Financial Group to fax an Acord Certificate to Perdue Farms, Inc., in Beaver Dam, Kentucky.

9.     On or about April 30, 2001, defendants **IVAN KANIS, LUCIA KANIS** and **PAVEL PREUS** caused a letter to be sent on behalf of S&S Commercial Services Corporation to Perdue Farms, Inc., in Beaver Dam, Kentucky, to notify that S&S Commercial Services purchased J&K Professional Services Corporation and all its accounts.

10.    On or about May 4, 2001, defendant **PAVEL PREUS** caused a facsimile to be faxed from Coral Financial Group. in Coral Springs, Florida, telephone

23

number 954-345-2614, to Perdue Farms, Inc., in Dothan, Alabama,

telephone number 334-702-6203.

11.   On or about May 4, 2001, defendant **PAVEL PREUS** caused a contract to

be sent from S&S Commercial Services Corp. in Coral Springs, Florida,

telephone number 954-341-6413 to Perdue Farms, Inc., in Dothan,

Alabama, telephone number 334-702-6203.

12.   On or about May 4, 2001, defendants **LUCIA KANIS** and **PAVEL**

**PREUS**  caused Coral Financial Group in Coral Springs, Florida, to send a

facsimile to Perdue Farms, Inc., in Beaver Dam, Kentucky.

13.   On or about May 7, 2001, defendants **PAVEL PREUS** caused a contract to

be signed on behalf of S&S Commercial Services Corporation with Perdue

Farms, Inc., in Dothan, Alabama, to provide leased employees.

14.   On or about May 17, 2001, defendants **LUCIA KANIS** and **PAVEL**

**PREUS** caused Perdue Farms, Inc., to mail check #10820444 in the amount

of $14,478.68 to S&S Commercial Services Corporation in Davie, Florida.

15.   On or about May 31, 2001, defendants **LUCIA KANIS** and **PAVEL**

**PREUS** caused Perdue Farms, Inc., to mail check #10824081 in the amount

of $14,245.11 to S&S Commercial Services Corporation in Davie, Florida.

16.   On or about June 19, 2001, defendant **PAVEL PREUS** caused Perdue

Farms, Inc., to mail check #10832486 in the amount of $9,096.16 to S&S

Commercial Services Corporation in Davie, Florida.

17.   On or about July 10, 2001, defendant **PAVEL PREUS** caused Perdue

24

Farms, Inc., to mail check #10841912 in the amount of $9,428.83 to S&S

Commercial Services Corporation in Davie, Florida.

I.    WAYNE FARMS

    1.    On or about June 22, 1999, defendants **JOZEF BOGACKI, JAROSLAW**

**SAWCZUK,** and **ANDOR PIKALI** caused J.A.J. Express Management

Corporation in Clearwater, Florida, to enter into a contract for leased labor

with Wayne Farms in Danville, Arkansas.

    2.    Beginning in or about June, 1999 and continuing until on or about

September, 2000, defendants **JOZEF BOGACKI, JAROSLAW**

**SAWCZUK,** and **ANDOR PIKALI** caused J.A.J. Express Management

Corporation in Clearwater, Florida, to employ approximately 52

undocumented workers at Wayne Farms in Danville, Arkansas.

    3.    On or about August 11, 2000, defendant **JOZEF BOGACKI** caused copies

of employee passports and copies of altered I-94 arrival documents to be

sent to Wayne Farms in Danville, Arkansas in response to letters mailed by

Wayne Farms requesting proof of work eligibility for J.A.J. Express

Management Corporation employees leased to Wayne Farms.

J.    WELLS' DAIRY, INC

    1.    On or about March 14, 2000, defendants **JOZEF BOGACKI,**

**JAROSLAW SAWCZUK,** and **ANDOR PIKALI** caused J.A.J. Express

Management Corporation in Coral Springs, Florida, to fax a contract to

Wells' Dairy, Inc., in LeMars, Iowa.

25

2.      On or about April 10, 2000, defendants **JOZEF BOGACKI,**
**JAROSLAW SAWCZUK,** and **ANDOR PIKALI** caused J.A.J. Express
Management Corporation to enter into a contract with Wells' Dairy, Inc., in
LeMars, Iowa, to provide leased employees.

3.      On or about June 7, 2000, defendants **JOZEF BOGACKI, JAROSLAW**
**SAWCZUK,** and **ANDOR PIKALI** caused Wells' Dairy, Inc., in LeMars,
Iowa, to mail check #124287 in the amount of $68,291.85 to J.A.J. Express
Management Corporation in Clearwater, Florida.

4.      On or about June 12, 2000, defendants **JOZEF BOGACKI, JAROSLAW**
**SAWCZUK,** and **ANDOR PIKALI** caused Wells' Dairy, Inc., in LeMars,
Iowa, to mail check #125267 in the amount of $71,324.28 to J.A.J. Express
Management Corporation in Clearwater, Florida.

5.      On or about August 3, 2000, defendants **JOZEF BOGACKI,**
**JAROSLAW SAWCZUK,** and **ANDOR PIKALI** caused Wells' Dairy,
Inc., in LeMars, Iowa, to mail check #137510 in the amount of $41,046.63
to J.A.J. Express Management Corporation in Clearwater, Florida.

6.      On or about August 10, 2000, defendants **JOZEF BOGACKI,**
**JAROSLAW SAWCZUK** and **ANDOR PIKALI** caused  N.S.
Management Corporation of USA, Inc. to enter into a contract with Wells'
Dairy Inc., in LeMars, Iowa, to provide leased employees.

7.      On or about September 11, 2000, defendants **JOZEF BOGACKI,**
**JAROSLAW SAWCZUK,** and **ANDOR PIKALI** caused Wells' Dairy,

Inc., in LeMars, Iowa, to mail check #145709 in the amount of $87,434.24

to J.A.J. Express Management Corporation in Clearwater, Florida.

8.     On or about September 29, 2000, defendants **ANDOR PIKALI**,

**JAROSLAW SAWCZUK** and **JOZEF BOGACKI** met with an official

of Wells' Dairy, Inc., in LeMars, Iowa.

9.     On or about October 4, 2000, defendants **JOZEF BOGACKI**,

**JAROSLAW SAWCZUK**, and **ANDOR PIKALI** caused Wells' Dairy,

Inc., in LeMars, Iowa, to mail check #150862 in the amount of $67,869.84

to J.A.J. Express Management Corporation in Clearwater, Florida.

10.    On or about December 26, 2000, defendants **JOZEF BOGACKI,**

**JAROSLAW SAWCZUK** and **ANDOR PIKALI** caused  N.S.

Management Corporation of USA to sign a contract with Wells' Dairy Inc.,

in LeMars, Iowa, to provide leased employees.

11.    On or about April 25, 2001, defendant **JOZEF BOGACKI** caused copies

of employee passports and copies of altered I-94 arrival documents to be

mailed to Wells' Dairy, Inc., in LeMars, Iowa.

12.    On or about August 6, 2003, defendant **ANDOR PIKALI** met with an

official of Wells' Dairy, Inc., in LeMars, Iowa.

13.    On or about August 11, 2003, defendants **JOZEF BOGACKI,**

**JAROSLAW SAWCZUK**, and **ANDOR PIKALI** caused Professional

Services Group of USA Corporation. to mail  a contract to Wells' Dairy,

Inc., in LeMars, Iowa, to provide leased employees.

27

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2-24-WIRE FRAUD

32.     Paragraphs 1 through 17 of the General Allegations and paragraphs 21 through 30 of Count 1 of this Indictment are realleged and incorporated as though fully set forth herein.

## THE SCHEME TO DEFRAUD

33.     It was the purpose of the scheme to defraud for the defendants unjustly to enrich themselves by charging client businesses for the leasing of workers that defendants falsely represented to be legally employed and further falsely represented that the defendants were collecting all payroll taxes including Social Security, federal withholding income tax, federal unemployment tax, and Medicare taxes and providing workers' compensation insurance for the employees, when in truth and in fact, as the defendants well knew, the workers were neither authorized to remain nor work in the United States and the defendants through their employee leasing companies knowingly defrauded the United States by failing to deduct, collect, and account for the taxes from the alien workers' paychecks and never paid the employers' share of the employees' payroll taxes due and owing to the U.S. Treasury for the alien workers and unlawfully kept approximately $5,725,000.00 in taxes.

## USE OF THE WIRES

34.     On or about the dates in the counts listed below, in Broward County, in the Southern District of Florida, and elsewhere, the defendants, as identified as to each count below, devised and intended to devise the above-referenced scheme to defraud, and for the purpose of executing and attempting to execute the scheme to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, did knowingly transmit and cause to be transmitted in interstate commerce by means of wire communications, certain writings, signs, signals, and sounds more specifically described below:

28

| Count | Date | Defendants | Description of Wire Communication |
|---|---|---|---|
| 2 | 03/14/00 | **JAROSLAW SAWCZUK, ANDOR PIKALI,** and **JOZEF BOGACKI** | Fax of employment contract from J.A.J. Express Management Corporation in Clearwater, Florida, to Wells' Dairy, Inc., in LeMars, Iowa. |
| 3 | 7/20/00 | **JAROSLAW SAWCZUK, ANDOR PIKALI,** and **JOZEF BOGACKI** | Fax of Acord Certificate from Coral Financial Group of Coral Springs, Florida, on behalf of J.A.J. Express Management Corporation, Clearwater, Florida, to Wray Roofing, in Newton, Kansas, and to Idaho Timber, in Halstead, Kansas. |
| 4 | 07/25/00 | **JAROSLAW SAWCZUK,** and **ANDOR PIKALI** | Fax of employment contract from Oak Valley Farms, Inc., in Omaha, Nebraska, to TGA Business Management Corporation in Coral Springs, Florida. |
| 5 | 11/16/00 | **JAROSLAW SAWCZUK, IVAN KANIS, LUCIA KANIS,** and **ANDOR PIKALI** | Fax of Acord Certificate from Coral Financial Group of Coral Springs, Florida, on behalf of J&K Professional Services Corporation, in Coral Springs, Florida, to Perdue Farms, Inc., in Beaver Dam, Kentucky. |
| 6 | 11/16/00 | **IVAN KANIS, LUCIA KANIS, JAROSLAW SAWCZUK,** and **ANDOR PIKALI** | Fax of Acord Certificate from Coral Financial Group of Coral Springs, Florida, on behalf of J&K Professional Services, Inc., in Coral Springs, Florida, to Perdue Farms, Inc., in Dothan, Alabama. |
| 7 | 11/16/00 | **IVAN KANIS LUCIA KANIS JAROSLAW SAWCZUK,** and **ANDOR PIKALI** | Fax of Acord Certificate from Coral Financial Group of Coral Springs, Florida, on behalf of J&K Professional Services Corporation, in Coral Springs, Florida, to Perdue Farms, Inc., in Accomac, Virginia. |
| 8 | 11/16/00 | **IVAN KANIS LUCIA KANIS JAROSLAW SAWCZUK,** and **ANDOR PIKALI** | Fax of Acord Certificate from Coral Financial Group of Coral Springs, Florida, on behalf of J&K Professional Services Corporation., in Coral Springs, Florida, to Perdue Farms, Inc., in Dillon, South Carolina. |

| Count | Date | Defendants | Description of Wire Communication |
|---|---|---|---|
| 9 | 11/16/00 | **IVAN KANIS, LUCIA KANIS, JAROSLAW SAWCZUK, and ANDOR PIKALI** | Fax of Acord Certificate from Coral Financial Group of Coral Springs, Florida, on behalf of J&K Professional Services Corporation., in Coral Springs, Florida, to Cal-Maine Foods, Inc., in Guthrie, Kentucky. |
| 10 | 05/04/01 | **IVAN KANIS, LUCIA KANIS, and PAVEL PREUS** | Fax of employment contract from S&S Commercial Services Corp., in Davie, Florida, to Perdue Farms, Inc., in Dothan, Alabama. |
| 11 | 05/04/01 | **JAROSLAW SAWCZUK, ANDOR PIKALI, IVAN KANIS, LUCIA KANIS, and PAVEL PREUS** | Fax of Acord Certificate from Coral Financial Group of Coral Springs, Florida, on behalf of S&S Commercial Services Corp., in Davie, Florida, to Perdue Farms, Inc., in Beaver Dam, Kentucky. |
| 12 | 05/04/01 | **IVAN KANIS, LUCIA KANIS, and PAVEL PREUS** | Fax of Acord Certificate from Coral Financial Group of Coral Springs, Florida, on behalf of S&S Commercial Services Corp., in Davie, Florida, to Cal-Maine Foods, Inc., in Guthrie, Kentucky. |
| 13 | 05/04/01 | **IVAN KANIS, LUCIA KANIS, and PAVEL PREUS** | Fax of Acord Certificate from Coral Financial Group of Coral Springs, Florida, on behalf of S&S Commercial Services Corp., in Davie, Florida, to Flavor House in Dothan, Alabama. |
| 14 | 05/04/01 | **IVAN KANIS, LUCIA KANIS, and PAVEL PREUS** | Fax of Acord Certificate from Coral Financial Group of Coral Springs, Florida, on behalf of S&S Commercial Services Corp., in Davie, Florida, to Perdue Farms, Inc., in Dothan, Alabama. |
| 15 | 06/05/01 | **JAROSLAW SAWCZUK, ANDOR PIKALI, IVAN KANIS, and LUCIA KANIS** | Fax of letter from S&V Commercial Services Corp., in Pembroke Pines, Florida, to Fairview Mills, Inc., in Seneca, Kansas. |

| Count | Date | Defendants | Description of Wire Communication |
|-------|------|-----------|-----------------------------------|
| 16 | 11/29/01 | **IVAN KANIS, LUCIA KANIS, and PAVEL PREUS** | Fax of Acord Certificate from Coral Financial Group of Coral Springs, Florida, on behalf of S&S Commercial Services Corp., in Davie, Florida, to Cal-Maine Foods, Inc., in Guthrie, Kentucky. |
| 17 | 11/29/01 | **IVAN KANIS, LUCIA KANIS, ANDOR PIKALI, JAROSLAW SAWCZUK, and PAVEL PREUS** | Fax of Acord Certificate from Coral Financial Group of Coral Springs, Florida, on behalf of S&S Commercial Services Corp., in Davie, Florida, to Perdue Farms, Inc., in Beaver Dam, Kentucky. |
| 18 | 01/07/02 | **PAVEL PREUS** | Fax of employment contract from S&V Commercial Services Corp., in Pembroke Pines, Florida, to Mermentau Rice, Inc., in Mermentau, Louisiana. |
| 19 | 01/25/02 | **PAVEL PREUS** | Fax of Acord Certificate from Coral Financial Group of Coral Springs, Florida, on behalf of S&S Commercial Services Corp., in Davie, Florida, to Cal-Maine Foods, Inc., in Bethune, South Carolina. |
| 20 | 04/22/02 | **PAVEL PREUS** | Fax of contract from S&S Commercial Services Corp., in Davie, Florida, to Cal-Maine Foods, Inc., in Pine Grove, Louisiana. |
| 21 | 04/22/02 | **PAVEL PREUS** | Fax of Acord Certificate from Coral Financial Group of Coral Springs, Florida, on behalf of S&S Commercial Services Corp., in Davie, Florida, to Cal-Maine Foods, Inc., in Pine Grove, Louisiana. |
| 22 | 05/29/02 | **JAROSLAW SAWCZUK, and ANDOR PIKALI** | Fax of address change from FHF Management & Commercial Services Corporation in Coral Springs, Florida, to Murphy Farms in Rose Hill, North Carolina. |
| 23 | 01/24/03 | **JAROSLAW SAWCZUK, ANDOR PIKALI, and PAVEL PREUS** | Fax of business data information questionnaire & payroll samples from S&V Commercial Services Corp., in Pembroke Pines, Florida, to Fairview Mills, Inc., in Seneca, Kansas. |

| Count | Date | Defendants | Description of Wire Communication |
|-------|------|------------|-----------------------------------|
| 24 | 09/15/03 | **JAROSLAW SAWCZUK, JOZEF BOGACKI, and ANDOR PIKALI** | Fax of list of alien workers sent by TGA Business Management Corporation in Coral Springs, Florida, to Wells' Dairy, Inc., in LeMars, Iowa. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

### COUNT 25 - CONSPIRACY TO COMMIT MONEY LAUNDERING

35.     Paragraphs 1 through 17 of the General Allegations and paragraphs 19 through 30

of Count 1, and paragraphs 33 and 34 of Counts 2-24, of this Indictment are realleged and

incorporated as though fully set forth herein.

36.     Beginning on or about at least January 1, 1999, and continuing through on or

about December 31, 2003, at Broward County, in the Southern District of Florida, and elsewhere, the

defendants,

**JAROSLAW SAWCZUK,**
**a/k/a**
**Jerry Sawczuk,**
**ANDOR PIKALI,**
**a/k/a**
**Andy Pikali,**
**JOZEF BOGACKI,**
**IVAN KANIS,**
**LUCIA KANIS,**
**a/k/a**
**Lucia Kanisova, and**
**PAVEL PREUS,**
**a/k/a**
**Pavel Preuss,**
**Paul Preuss,**
**Pawel Preuss,**
**Paul Preus,**
**Poul Preus, and**
**Pawel Preus,**

32

did knowingly combine, conspire, confederate and agree with each other, and with others known

and unknown to the Grand Jury, to conduct and attempt to conduct financial transactions affecting

interstate commerce,  knowing that the property involved in the financial transactions represented

the proceeds of some form of unlawful activity, and that in fact involved the proceeds of specified

unlawful activity, to wit, mail fraud, wire fraud, and visa fraud, in violation of Title 18, United

States Code, Sections 1341, 1343, and 1546,  and harboring, transporting, and inducing aliens to

reside in the United States, in violation of Title 8, United States Code, Section 1324, and with the

intent to promote the carrying on of such specified unlawful activity, in violation of Title 18,

United States Code, Section 1956(a)(1)(A)(i).

     37.     It is further alleged that the amount of financial transactions is over $20,000,000.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 26 - CONSPIRACY TO DEFRAUD THE UNITED STATES

     38.     The General Allegations set forth in the paragraphs number 1 through 17, and

paragraphs 19 through 30 of Count 1, and paragraphs 33 and 34 of Counts 2-24, of this

Indictment are realleged and  incorporated herein as if set out in full.

## BACKGROUND ALLEGATIONS

     39.     The IRS is responsible for administering and enforcing the tax laws of the United

States, and collecting taxes owed to the Treasury of the United States by its citizens and other entities.

     40.     Title 26, United States Code, Section 3101(a) imposes on the income of every

individual after 1990 a tax of 6.2% for "old-age, survivors, and disability insurance" (referred to as

Social Security taxes) and Section 3101(b) imposes on the income of every individual after 1985 a

tax of 1.45% for hospital insurance (referred to as Medicare taxes).

     41.     Title 26, United States Code, Section 3102(a) imposes upon employers the duty to

collect the Social Security and Medicare taxes from an employee's wages.

42.     Title 26, United States Code, Section 3111(a) imposes upon employers the requirement to pay the employers' share of Social Security tax amounting to 6.2% and Medicare taxes amounting to 1.45% on each employee's wages.

43.     Title 26, United States Code, Section 3402(a) requires every employer making payment of wages to deduct and withhold upon such wages an income tax from the employee's wages.

44.     IRS Treasury Regulation 26 CFR  Section 31.6011 requires the employer to file Employer's Quarterly Federal Tax Return (Form 941) with the IRS and to report the income taxes, Social Security taxes and Medicare taxes withheld from employee's wages and the employer's share. Section 31.6011 also requires employers of farm labor to file Employers' Annual Federal Tax Return for Agricultural Employees (Form 943) with the IRS and to report the income taxes, Social Security and Medicare taxes withheld from agricultural laborers' wages and the employers' share.

45.     Title 26, United States Code, Sections 3301 and 3302 impose on an employer the duty to pay an annual federal unemployment tax of .008% on the first $7,000 in wages paid to each employee.

46.     IRS Treasury Regulation 26 CFR Section 31.6011(a)-3 sets forth the requirements that an employer file Employer's Annual Unemployment (FUTA) Tax Return (Form 940) with the IRS.

47.     IRS Treasury Regulation 26 CFR Section 31.6302 requires employers who have employees to make deposits to the U.S. Treasury of the amounts withheld for income tax, Social Security, Medicare and federal unemployment taxes.

48.     At all relevant times, defendants **JAROSLAW SAWCZUK, ANDOR PIKALI,**

**JOZEF BOGACKI, IVAN KANIS, LUCIA KANIS** and **PAVEL PREUS**, in the Southern District of Florida, and elsewhere, created and caused to be created, and operated, often in the name of nominees, multiple corporations and entities, many having almost identical names, for the purpose of "leasing" alien workers who had no authorization to remain and work in the United States to third-party U. S. business clients.

49.     Beginning on or about at least September 24, 1997, and continuing to the date of this Indictment, the defendants solicited business clients for their employee leasing companies, presenting, discussing, and signing contracts and making oral agreements whereby defendants agreed to provide leased employees, and to collect and pay over from the wages of the leased employees all applicable federal and payroll and unemployment taxes to the U.S. Treasury.

## THE CONSPIRACY

50.     Beginning on or about at least September 24, 1997,  and continuing up to the date of this Indictment, in Southern District of Florida and elsewhere, the defendants:

> **JAROSLAW SAWCZUK,**
> **ANDOR PIKALI,**
> **JOZEF  BOGACKI,**
> **IVAN KANIS,**
> **LUCIA KANIS,** and
> **PAVEL PREUS,**

did unlawfully, willfully, and knowingly, combine, conspire, confederate, and agree with each other and with other individuals both known and unknown to the Grand Jury to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful functions of the IRS in the ascertainment, computation, assessment, and collection of the revenue, to wit: the collection, accounting for, and payment of payroll and unemployment taxes for the leased employees of the defendants' corporations for the tax years 1999, 2000, 2001, and 2002, all in violation of Title 26,

United States Code, Section 7201.

## OBJECT OF THE CONSPIRACY

51.     It was the purpose and object of the conspiracy for the defendants to unjustly enrich themselves by knowingly and willfully impeding, impairing, obstructing and defeating the lawful functions of the IRS in the ascertainment, computation, assessment and collection of their employees' payroll taxes by not collecting the payroll taxes, not making the required employer Social Security and Medicare contributions, and not reporting, accounting for, and paying the payroll taxes owed to the U.S. Treasury and fraudulently converting and unlawfully taking approximately $5,726,374.43, that should have been paid to the U.S. Treasury.

## MANNER AND MEANS OF THE CONSPIRACY

52.     The manner and means by which the defendants sought to accomplish the objects of the conspiracy included among other things:

A.      The defendants' employee leasing corporations provided leased employees to their U.S. business clients.

B.      The defendants' employee leasing corporation's contracts and oral agreements required the U.S. business clients to pay the hourly rates for each employee directly to the defendants' employee leasing companies.

C.      As a consequence of the contracts and oral agreements with the defendants' employee leasing companies, their U.S. business clients did not withhold the employees' Social Security, Medicare, and withholding income tax from the amounts paid to the defendants' employee leasing companies, or pay the employers' share of Social Security, Medicare, and unemployment taxes, as required by law.

36

D.     The defendants' employee leasing companies by contract and oral agreement agreed to be responsible for the collection and payment of their leased employees' payroll taxes.

E.     The defendants issued and caused to be issued, and signed and caused to be signed, often in nominee names, by strawmen, or by stamped signatures, contracts and agreements on behalf of their employee leasing corporations, that generally falsely promised to collect and pay over to the United States Treasury all applicable federal payroll taxes, including but not limited to federal income tax, Social Security tax, Medicare and unemployment tax contributions and to comply with all United States labor laws, and otherwise failed to account for said funds, including, but not limited to, on their personal income tax returns.

F.     The defendants, while assuring business clients orally and in writing that they would collect, account for, and pay over all federal and state payroll taxes and comply with all applicable laws – did not contribute, collect, account for, and pay to the U.S. Treasury payroll taxes or file truthful employment tax returns Forms 940, 941 and 943 as required on behalf of the alien workers.

G.     Defendants **JOZEF BOGACKI, IVAN KANIS, LUCIA KANIS,** and **PAVEL PREUS** individually issued corporate checks payable personally to defendants JAROSLAW SAWCZUK and ANDOR PIKALI.

H.     Defendants **JAROSLAW SAWCZUK** and **ANDOR PIKALI**, between 1999 and 2002, as Directors of FHF Commercial Services Corp., FHF Management and Commercial Services Corporation, and TGA Business Management

37

Corporation, subcontracted their contractual obligations to pay the alien employees and to collect and pay the payroll taxes to the IRS to the following nominees and strawmen: JWA Professional Services Corporation, Pates Service Union, Quest United, Quest Union Services, Quest Service Union and U&K Lagoon, Inc.

I.     The defendants **JAROSLAW SAWCZUK** and **ANDOR PIKALI** knowingly and intentionally structured nominee subcontractor companies in order to evade and defeat the payment of payroll taxes due and owing to the U.S. Treasury.

J.     These nominee subcontractors did not control the alien workers provided under contract to the business clients, and solely functioned as "fronts" to receive funds from defendants **JAROSLAW SAWCZUK's** and **ANDOR PIKALI's** companies and to issue paychecks to the alien workers.

K.     For the tax years listed below, the defendants paid their leased employees' wages, but siphoned off that portion of the wages that should have been paid for federal payroll taxes and federal unemployment taxes, and failed truthfully to collect, account for, and pay over the following approximate amounts due and owing the U.S. Treasury; instead, the defendants unlawfully retained the amounts for their personal use and enrichment, concealing income through fund transfers and the use of sub-companies, subcontractors, strawmen, and nominees:

| Tax Year | Defendants | Employee Leasing Company | Approximate Wages Paid Leased Employees | Approximate Taxes Owed to IRS |
|---|---|---|---|---|
| 1999 | **SAWCZUK and PIKALI** | FHF Commercial Services Corporation | $1,128,928.00 | $254,912 |
| 1999 | **SAWCZUK and PIKALI** | FHF Management & Commercial Services Corporation | $87,381 | $19,730 |
| 1999 | **SAWCZUK, PIKALI, and BOGACKI** | J.A.J. Express Management Corporation | $1,398,943 | $313,538 |
| 1999 | **SAWCZUK and PIKALI** | TGA Business Management Corporation | $216,131 | $48,802 |
| 2000 | **SAWCZUK and PIKALI** | FHF Management & Commercial Services Corporation | $3,175,352 | $716,994 |
| 2000 | **SAWCZUK, PIKALI, and BOGACKI** | J.A.J. Express Management Corporation | $2,367,804 | $533,311 |
| 2000 | **SAWCZUK, IVAN KANIS, LUCIA KANIS, and PIKALI** | J&K Professional Services Corporation | $ 4,793,804 | $1,173,516 |
| 2000 | **SAWCZUK and PIKALI** | TGA Business Management Corporation | $472,045 | $106,587 |
| 2001 | **SAWCZUK and PIKALI** | FHF Management & Commercial Services Corporation | $2,491,607 | $562,605 |
| 2001 | **SAWCZUK, PIKALI, and BOGACKI** | J.A.J. Express Management Corporation | $104,595 | $23,617 |

| Tax Year | Defendants | Employee Leasing Company | Approximate Wages Paid Leased Employees | Approximate Taxes Owed to IRS |
|---|---|---|---|---|
| 2001 | SAWCZUK, IVAN KANIS, LUCIA KANIS, and PIKALI | J&K Professional Services Corporation | $760,585 | $213,214 |
| 2001 | SAWCZUK, PIKALI, and BOGACKI | N.S. Management Corporation of USA, Inc. | $1,988,341 | $514,646 |
| 2001 | SAWCZUK, PREUS, IVAN KANIS, and LUCIA KANIS | S&S Commercial Services Corporation | $1,309,656 | $295,720 |
| 2001 | SAWCZUK, PREUS, IVAN KANIS, and LUCIA KANIS | S&V Commercial Services Corporation | $118,340 | $32,668 |
| 2001 | SAWCZUK and PIKALI | TGA Business Management Corporation | $ 376,784 | $85,077 |
| 2002 | SAWCZUK and PIKALI | FHF Management & Commercial Services | $2,156,532 | $434,541 |
| 2002 | SAWCZUK, PIKALI, and BOGACKI | N.S. Management Corporation of USA, Inc. | $408,051 | $105,625 |
| 2002 | SAWCZUK, PREUS, IVAN KANIS, and LUCIA KANIS | S&S Commercial Services Corporation | $888,582 | $179,049 |
| 2002 | SAWCZUK, PREUS, IVAN KANIS, and LUCIA KANIS | S&V Commercial Services Corporation | $338,019 | $79,096 |

40

| Tax Year | Defendants | Employee Leasing Company | Approximate Wages Paid Leased Employees | Approximate Taxes Owed to IRS |
|---|---|---|---|---|
| 2002 | **SAWCZUK and PIKALI** | TGA Business Management Corporation | $164,354 | $33,117 |

53.     In furtherance of the conspiracy to defraud the IRS, the defendants listed below filed

false U.S. Individual Income Tax Returns (Forms 1040), that excluded from their gross income the

following compensation from their labor-leasing companies during the following tax years:

| Defendant | Tax Years | Employee Leasing Co. | Excluded Compensation |
|---|---|---|---|
| **JAROSLAW SAWCZUK** | 1999<br>2000<br>2001 | J.A.J. Express Management Corporation | $50,832.94<br>$44,500.00<br>$2,500.00 |
| | 2000<br>2001 | J&K Professional Services Corporation | $118,278.00<br>$2,000.00 |
| | 2001 | N.S. Management Corporation of USA, Inc. | $11,300 |
| | 2002 | S&S Commercial Services Corporation | $20,800.00 |
| | 2002 | S&V Commercial Services Corporation | $6,810.00 |

| **Defendant** | **Tax Years** | **Employee Leasing Co.** | **Excluded Compensation** |
|---|---|---|---|
| **ANDOR PIKALI** | 1999<br>2000 | J.A.J. Express<br>Management Corporation | $97,612.50<br>$87,000.00 |
| | 2000<br>2001 | J&K Professional<br>Services Corporation | $225,383.90<br>$20,541.00 |
| | 2001 | N.S. Management<br>Corporation of USA, Inc. | $2,600 |
| | 2002 | S&S Commercial<br>Services Corporation | $19,284.63 |
| | 2002 | S&V Commercial<br>Services Corporation | $34,383.26 |

54.     In furtherance of the conspiracy to defraud the IRS, the defendants listed below

failed to file personal income tax returns reporting for the listed tax years the compensation from the

following employee leasing companies:

| **Defendant** | **Tax Years** | **Employee Leasing Co.** | **Excluded Compensation** |
|---|---|---|---|
| **PAVEL PREUS** | 2000<br>2001 | J&K Professional<br>Services Corp./J&K<br>Express Services<br>Corporation | $6,000.00<br>$39,879.00 |
| | 2000<br>2001 | N.S. Management<br>Corporation of USA | $48,150.00<br>$23,000.00 |
| | 2001<br>2002 | S&S Commercial<br>Services Corporation | $86,641.93<br>$70,410.97 |
| | 2001<br>2002 | S&V Commercial<br>Services Corporation | $3,000.00<br>$ 25,686.54 |
| **IVAN KANIS** | 2000<br>2001 | J&K Professional<br>Services Corp. | $206,274.00<br>$6,300.00 |
| | 2001 | S&V Commercial<br>Services Corporation | $4,200.00 |

42

| Defendant | Tax Years | Employee Leasing Co. | Excluded Compensation |
|-----------|-----------|----------------------|-----------------------|
| LUCIA KANIS | 2000 | J&K Professional Services Corp. | $219,081.00 |
| | 2001 | J&K Professional Services | $8,549.00 |

## OVERT ACTS

55.     In furtherance of the conspiracy and to effect the objects thereof, one or more of

the conspirators committed and caused to be committed at least one of the following overt acts,

among others, in Broward County,  in the Southern District of Florida and elsewhere:

### U.S. INDIVIDUAL INCOME TAX RETURNS FORM 1040

1.      On or about March 27, 2000,  defendant **JAROSLAW SAWCZUK** filed a
false U.S. Individual Tax Return (Form 1040) for the calendar year 1999,
signed under penalty of perjury, reporting total income of $124,371.00.

2.      On or about April 2, 2001, defendant **JAROSLAW SAWCZUK** filed a false
U.S. Individual Tax Return (Form 1040) for the calendar year 2000, signed
under penalty of perjury, reporting total income of $88,658.00.

3.      On or about October 10, 2002, defendant **JAROSLAW SAWCZUK** filed a
false U.S. Individual Tax Return (Form 1040) for the calendar year 2001,
signed under penalty of perjury, reporting total income of $174,831.00.

4.      On or about October 15, 2003, defendant **JAROSLAW SAWCZUK** filed a
false U.S. Individual Tax Return (Form 1040) for the calendar year 2002,
signed under penalty of perjury, reporting total income of $61,072.00.

5.      On or about April 12, 2000, defendant **ANDOR PIKALI** filed a false  U.S. Individual Tax Return (Form 1040) for the calendar year 1999, signed under penalty of perjury, reporting total income of $137,402.00.

6.      On or about April 6, 2001, defendant **ANDOR PIKALI** filed a false  U.S. Individual Tax Return (Form 1040) for the calendar year 2000, signed under penalty of perjury, reporting total income of $136,036.00.

7.      On or about October 20, 2002, defendant **ANDOR PIKALI** filed a false U.S. Individual Tax Return (Form 1040) for the calendar year 2001, signed under penalty of perjury, reporting total income of $211,224.00.

8.      On or about February 2, 2004, defendant **ANDOR PIKALI** filed a false  U.S. Individual Tax Return (Form 1040) for the calendar year 2002, signed under penalty of perjury, reporting total income of $87,833.00.

9.      On or about October 6, 2000, defendant **JOZEF BOGACKI** filed a false U.S. Individual Tax Return (Form 1040) for the calendar year 1999, signed under penalty of perjury, reporting total income of $40,115.00.

10.      On or about August 15, 2001, defendant **JOZEF BOGACKI**  filed a false U.S. Individual Tax Return (Form 1040) for the calendar year 2000, signed under penalty of perjury, reporting total income of $14,350.00.

11.      On or about October 14, 2002, defendant **JOZEF BOGACKI** filed a false U.S. Individual Tax Return (Form 1040) for the calendar year 2001, signed under penalty of perjury, reporting total income of $19,024.00.

12.      On or about November 11, 2003, defendant **JOZEF BOGACKI** filed a false U.S. Individual Tax Return (Form 1040) for the calendar year 2002, signed under penalty of perjury, reporting total income of $31,312.00.

IRS FORMS 940, 941 AND 1120S

13.     On or about July 20, 1999, defendant **JAROSLAW SAWCZUK** filed a false Employer's Quarterly Federal Tax Return (Form 941) for TGA Business Management Corporation, for the quarter ending June 30, 1999, signed under penalty of perjury, reporting income tax withheld from wages, Social Security and medicare taxes of $3,350.38.

14.     On or about October 29, 1999, defendant **JAROSLAW SAWCZUK** filed a false Employer's Quarterly Federal Tax Return (Form 941) for TGA Business Management Corporation, for the quarter ending September 30, 1999, signed under penalty of perjury, reporting income tax withheld from wages, Social Security and Medicare taxes of $5,451.39.

15.     On or about January 24, 2000, defendant **JAROSLAW SAWCZUK** filed a false Employer's Annual Federal Unemployment (FUTA) Tax Return (Form 940) for TGA Business Management Corporation, for the calendar year ending 1999, signed under penalty of perjury, reporting federal unemployment tax liability of $168.00.

16.     On or about January 26, 2000, defendant **JAROSLAW SAWCZUK** filed a false Employer's Quarterly Federal Tax Return (Form 941) for TGA Business Management Corporation, for the quarter ending December 31, 1999, signed under penalty of perjury, reporting income tax withheld from wages, Social Security and Medicare taxes of $5,591.46.

17.     On or about March 7, 2000, defendant **ANDOR PIKALI** filed a false U.S. Income Tax Return for an S Corporation (Form 1120S) for TGA Business Management Corporation, for the calendar year ending 1999, signed under

penalty of perjury, reporting income and deductions.

18.    On or about April 20, 2000, defendant **JAROSLAW SAWCZUK** filed a false Employer's Quarterly Federal Tax Return (Form 941) for TGA Business Management Corporation, for the quarter ending March 31, 2000, signed under penalty of perjury, reporting income tax withheld from wages, Social Security and Medicare taxes of $4,343.82.

19.    On or about July 18, 2000, defendant **JAROSLAW SAWCZUK** filed a false Employer's Quarterly Federal Tax Return (Form 941) for TGA Business Management Corporation, for the quarter ending June 30, 2000, signed under penalty of perjury, reporting income tax withheld from wages, Social Security and Medicare taxes of $3,341.36.

20.    On or about October 25, 2000, defendant **JAROSLAW SAWCZUK** filed a false Employer's Quarterly Federal Tax Return (Form 941) for TGA Business Management Corporation, for the quarter ending September 30, 2000, signed under penalty of perjury, reporting income tax withheld from wages, Social Security and Medicare taxes of $4,282.66.

21.    On or about January 23, 2001, defendant **JAROSLAW SAWCZUK** filed a false Employer's Quarterly Federal Tax Return (Form 941) for TGA Business Management Corporation, for the quarter ending December 31, 2000, signed under penalty of perjury, reporting income tax withheld from wages, Social Security and Medicare taxes of $4,645.46.

22.    On or about January 23, 2001, defendant **JAROSLAW SAWCZUK** filed a

false Employer's Annual Federal Unemployment (FUTA) Tax Return (Form 940) for TGA Business Management Corporation, for the calendar year ending 2000, signed under penalty of perjury, reporting Federal Unemployment tax liability of $120.00.

23. On or about April 1, 2001, defendant **ANDOR PIKALI** filed a false U.S. Income Tax Return for an S Corporation (Form 1120S) for TGA Business Management Corporation, for the calendar year ending 2000, signed under penalty of perjury, reporting income and deductions.

24. On or about May 1, 2001, defendant **JAROSLAW SAWCZUK** filed a false Employer's Quarterly Federal Tax Return (Form 941) for TGA Business Management Corporation, for the quarter ending March 31, 2001, signed under penalty of perjury, reporting income tax withheld from wages, Social Security and Medicare taxes of $2,509.56.

25. On or about July 30, 2001, defendant **JAROSLAW SAWCZUK** filed a false Employer's Quarterly Federal Tax Return (Form 941) for TGA Business Management Corporation, for the quarter ending June 30, 2001, signed under penalty of perjury, reporting income tax withheld from wages, Social Security and Medicare taxes of $3,350.38.

26. On or about November 27, 2001, defendant **JAROSLAW SAWCZUK** filed a false Employer's Quarterly Federal Tax Return (Form 941) for TGA Business Management Corporation, for the quarter ending September 30, 2001, signed under penalty of perjury, reporting income tax withheld from

wages, Social Security and Medicare taxes of $1,062.72.

27.     On or about January 18, 2002, defendant **JAROSLAW SAWCZUK** filed a

false Employer's Quarterly Federal Tax Return (Form 941) for TGA Business

Management Corporation, for the quarter ending December 31, 2001, signed

under penalty of perjury, reporting income tax withheld from wages, Social

Security and Medicare taxes of $853.50.

28.     On or about January 18, 2002, defendant **JAROSLAW SAWCZUK** filed a

false Employer's Annual Federal Unemployment (FUTA) Tax Return (Form

940) for TGA Business Management Corporation, for the calendar year ending

2001, signed under penalty of perjury, reporting federal unemployment tax

liability of $97.98.

29.     On or about July 11, 2002, defendant **JAROSLAW SAWCZUK** filed a false

Employer's Quarterly Federal Tax Return (Form 941) for TGA Business

Management Corporation, for the quarter ending June 30, 2002, signed under

penalty of perjury, reporting income tax withheld from wages, Social Security

and Medicare taxes of $102.53.

30.     On or about August 1, 2002, defendant **ANDOR PIKALI** filed a false U.S.

Income Tax Return for an S Corporation (Form 1120S) for TGA Business

Management Corporation, for the calendar year ending 2001, signed under

penalty of perjury, reporting income and deductions.

31.     On or about November 8, 2002, defendant **JAROSLAW SAWCZUK** filed

a false Employer's Quarterly Federal Tax Return (Form 941) for TGA

48

Business Management Corporation, for the quarter ending September 30, 2002, signed under penalty of perjury, reporting income tax withheld from wages, Social Security and Medicare taxes of $0.00.

32.     On or about February 3, 2003, defendant **JAROSLAW SAWCZUK** filed a false Employer's Quarterly Federal Tax Return (Form 941) for TGA Business Management Corporation, for the quarter ending December 31, 2002, signed under penalty of perjury, reporting income tax withheld from wages, Social Security and Medicare taxes of $0.00.

33.     On or about February 3, 2003, defendant **JAROSLAW SAWCZUK** filed a false Employer's Annual Federal Unemployment (FUTA) Tax Return (Form 940) for TGA Business Management Corporation, for the calendar year ending 2002, signed under penalty of perjury, reporting Federal Unemployment tax liability of $38.80.

34.     On or about February 7, 2003, defendant **ANDOR PIKALI** filed a false U.S. Income Tax Return for an S Corporation (Form 1120S) for TGA Business Management Corporation, for the calendar year ending 2002, signed under penalty of perjury, reporting income and deductions.

35.     On or about October 8, 2002, defendant **JAROSLAW SAWCZUK** filed a false Employer's Quarterly Federal Tax Return (Form 941) for FHF Management & Commercial Services Corporation, for the quarter ending September 30, 1999, signed under penalty of perjury, reporting income tax withheld from wages, Social Security and Medicare taxes of $0.00.

36.     On or about February 3, 2000, defendant **JAROSLAW SAWCZUK** filed a false Employer's Quarterly Federal Tax Return (Form 941) for FHF Management & Commercial Services Corporation, for the quarter ending December 31, 1999, signed under penalty of perjury, reporting income tax withheld from wages, Social Security and Medicare taxes of $1,998.00.

37.     On or about February 3, 2000, defendant **JAROSLAW SAWCZUK** filed a false Employer's Annual Federal Unemployment (FUTA) Tax Return (Form 940) for FHF Management & Commercial Services Corporation, for the calendar year ending 1999, signed under penalty of perjury, reporting federal unemployment tax liability of $48.00.

38.     On or about March 14, 2000, defendant **JAROSLAW SAWCZUK** filed a false U.S. Income Tax Return for an S Corporation (Form 1120S) for FHF Management & Commercial Services Corporation, for the calendar year ending 1999, signed under penalty of perjury, reporting income and deductions.

39.     On or about June 6, 2000, defendant **ANDOR PIKALI** filed a false Employer's Quarterly Federal Tax Return (Form 941) for FHF Management & Commercial Services Corporation, for the quarter ending March 31, 2000, signed under penalty of perjury, reporting income tax withheld from wages, Social Security and Medicare taxes of $1,998.00.

40.     On or about July 27, 2000, defendant **JAROSLAW SAWCZUK** filed a false Employer's Quarterly Federal Tax Return (Form 941) for FHF Management & Commercial Services Corporation, for the quarter ending June 30, 2000,

signed under penalty of perjury, reporting income tax withheld from wages, Social Security and Medicare taxes of $0.00.

41.    On or about November 21, 2000, defendant **JAROSLAW SAWCZUK** filed a false Employer's Quarterly Federal Tax Return (Form 941) for FHF Management & Commercial Services Corporation, for the quarter ending September 30, 2000, signed under penalty of perjury, reporting income tax withheld from wages, Social Security and Medicare taxes of $1,998.00.

42.    On or about January 22, 2001, defendant **JAROSLAW SAWCZUK** filed a false Employer's Quarterly Federal Tax Return (Form 941) for FHF Management & Commercial Services Corporation, for the quarter ending December 31, 2000, signed under penalty of perjury, reporting income tax withheld from wages, Social Security and Medicare taxes of $72,186.96.

43.    On or about January 22, 2001, defendant **JAROSLAW SAWCZUK** filed a false Employer's Annual Federal Unemployment (FUTA) Tax Return (Form 940) for FHF Management & Commercial Services Corporation, for the calendar year ending 2000, signed under penalty of perjury, reporting federal unemployment tax liability of $119.55.

44.    On or about March 21, 2001, defendant **JAROSLAW SAWCZUK** filed a false U.S. Income Tax Return for an S Corporation (Form 1120S) for FHF Management & Commercial Services Corporation, for the calendar year ending 2000, signed under penalty of perjury, reporting income and deductions.

45.    On or about April 30, 2001, defendant **ANDOR PIKALI** filed a false

Employer's Quarterly Federal Tax Return (Form 941) for FHF Management & Commercial Services Corporation, for the quarter ending March 31, 2001, signed under penalty of perjury, reporting income tax withheld from wages, Social Security and Medicare taxes of $1,215.46.

46.     On or about July 30, 2001, defendant **JAROSLAW SAWCZUK** filed a false Employer's Quarterly Federal Tax Return (Form 941) for FHF Management & Commercial Services Corporation, for the quarter ending June 30, 2001, signed under penalty of perjury, reporting income tax withheld from wages, Social Security and Medicare taxes of $998.00.

47.     On or about November 15, 2001, defendant **JAROSLAW SAWCZUK** filed a false Employer's Quarterly Federal Tax Return (Form 941) for FHF Management & Commercial Services Corporation, for the quarter ending September 30, 2001, signed under penalty of perjury, reporting income tax withheld from wages, Social Security and Medicare taxes of $1,998.00.

48.     On or about January 21, 2002, defendant **JAROSLAW SAWCZUK** filed a false Employer's Annual Federal Unemployment (FUTA) Tax Return (Form 940) for FHF Management & Commercial Services Corporation, for the calendar year ending 2001, signed under penalty of perjury, reporting federal unemployment tax liability of $119.55.

49.     On or about January 31, 2002, defendant **JAROSLAW SAWCZUK** filed a false Employer's Quarterly Federal Tax Return (Form 941) for FHF Management & Commercial Services Corporation, for the quarter ending

52

December 31, 2001, signed under penalty of perjury, reporting income tax withheld from wages, Social Security and Medicare taxes of $65,005.20.

50.   On or about October 4, 2002, defendant **JAROSLAW SAWCZUK** filed a false U.S. Income Tax Return for an S Corporation (Form 1120S) for FHF Management & Commercial Services Corporation, for the calendar year ending 2001, signed under penalty of perjury, reporting income and deductions.

51.   On or about July 11, 2002, defendant **JAROSLAW SAWCZUK** filed a false Employer's Quarterly Federal Tax Return (Form 941) for FHF Management & Commercial Services Corporation, for the quarter ending June 30, 2002, signed under penalty of perjury, reporting income tax withheld from wages, Social Security and Medicare taxes of $4,036.00.

52.   On or about January 25, 2003, defendant **JAROSLAW SAWCZUK** filed a false Employer's Quarterly Federal Tax Return (Form 941) for FHF Management & Commercial Services Corporation, for the quarter ending September 30, 2002, signed under penalty of perjury, reporting income tax withheld from wages, Social Security and Medicare taxes of $12,108.00.

53.   On or about December 5, 2002, defendant **JAROSLAW SAWCZUK** filed a false Employer's Quarterly Federal Tax Return (Form 941) for FHF Management & Commercial Services Corporation, for the quarter ending March 31, 2002, signed under penalty of perjury, reporting income tax withheld from wages, Social Security and Medicare taxes of $0.00.

53

54.     On or about January 30, 2003, defendant **JAROSLAW SAWCZUK** filed a false Employer's Annual Federal Unemployment (FUTA) Tax Return (Form 940) for FHF Management & Commercial Services Corporation, for the calendar year ending 2002, signed under penalty of perjury, reporting Federal Unemployment tax liability of $112.00.

55.     On or about February 3, 2003, defendant **JAROSLAW SAWCZUK** filed a false Employer's Quarterly Federal Tax Return (Form 941) for FHF Management & Commercial Services Corporation, for the quarter ending December 31, 2002, signed under penalty of perjury, reporting income tax withheld from wages, Social Security and Medicare taxes of $12,108.00.

56.     On or about September 30, 2003, defendant **JAROSLAW SAWCZUK** filed a false U.S. Income Tax Return for an S Corporation (Form 1120S) for FHF Management & Commercial Services Corporation, for the calendar year ending 2002, signed under penalty of perjury, reporting income and deductions.

EMPLOYEE LEASING CONTRACTS

57.     In or about 1998, the defendants, **JAROSLAW SAWCZUK, ANDOR PIKALI,** and **JOZEF BOGACKI,** caused J.A.J. Express Management Corporation to enter into an employee leasing agreement with Tasler Corporation and agreed to collect and pay all payroll taxes for the leased employees.

58.     On or about September 11, 1998, the defendants, **JAROSLAW SAWCZUK,**

54

**ANDOR PIKALI,** and **JOZEF BOGACKI**, caused J.A.J. Express Management Corporation to enter into an employee leasing agreement with Idaho Timber Corporation and agreed to collect and pay all payroll taxes for the leased employees.

59.     On or about September 17, 1998, the defendant, **LUCIA KANIS**, caused J&K Services Corporation to enter into an employee leasing agreement with Fairview Mills, Inc., and agreed to collect and pay all payroll taxes for the leased employees.

60.     On or about July 7, 1999, the defendant, **JAROSLAW SAWCZUK**, caused TGA Business Management Corporation to enter into an employee leasing agreement with Oak Valley Farms, Inc., and agreed to collect and pay all payroll taxes for the leased employees.

61.     On or about September 16, 1999, the defendants, **IVAN KANIS** and **LUCIA KANIS**, caused J&K Express Services Corporation to enter into an employee leasing agreement with Flavor House Products, Inc., and agreed to collect and pay all payroll taxes for the leased employees.

62.     On or about September 21, 1999, the defendant, **ANDOR PIKALI**, caused FHF Management & Commercial Services Corporation to enter into an employee leasing agreement with Murphy Family Farms, Inc., and agreed to collect and pay all payroll taxes for the leased employees.

63.     On or about September 21, 1999, the defendants, **JAROSLAW SAWCZUK** and **ANDOR PIKALI**, caused TGA Business Management Services

Corporation to enter into an employee leasing agreement with Charoen Popkhand USA, Inc., and agreed to collect and pay all payroll taxes for the leased employees.

64.     On or about April 10, 2000, the defendants, **JAROSLAW SAWCZUK, ANDOR PIKALI,** and **JOZEF BOGACKI,** caused J.A.J. Express Management Corporation to enter into an employee leasing agreement with Wells' Dairy, Inc., and agreed to collect and pay all payroll taxes for the leased employees.

65.     On or about April 14, 2000, the defendants, **IVAN KANIS** and **LUCIA KANIS,** caused J&K Professional Services Corporation to enter into an employee leasing agreement with Cal-Maine Foods, Inc., and agreed to collect and pay all payroll taxes for the leased employees.

66.     On or about August 7, 2000, the defendant **JAROSLAW SAWCZUK** caused TGA Business Management Corporation to enter into an employee leasing agreement with Oak Valley Farms, Inc., and agreed to collect and pay all payroll taxes for the leased employees.

67.     On or about August 10, 2000, the defendants, **JAROSLAW SAWCZUK, ANDOR PIKALI,** and **JOZEF BOGACKI,** caused N.S. Management Corporation of USA, Inc., to enter into an employee leasing agreement with Wells' Dairy, Inc., and agreed to collect and pay all payroll taxes for the leased employees.

68.     On or about November 29, 2000, the defendants, **JAROSLAW SAWCZUK, ANDOR PIKALI,** and **JOZEF BOGACKI,** caused N.S. Management

Corporation of USA, Inc., to enter into an employee leasing agreement with Duckwall-Alco Stores, Inc., and agreed to collect and pay all payroll taxes for the leased employees.

69.     On or about December 26, 2000, the defendants, **JAROSLAW SAWCZUK, ANDOR PIKALI,** and **JOZEF BOGACKI**, caused N.S. Management Corporation of USA, Inc., to enter into an employee leasing agreement with Wells' Dairy, Inc., and agreed to collect and pay all payroll taxes for the leased employees.

70.     On or about January 2000, the defendants, **JAROSLAW SAWCZUK** and **ANDOR PIKALI**, caused FHF Management & Commercial Services Corporation to enter into an employee leasing agreement with Goldsboro Milling Company, Inc., and agreed to collect and pay all payroll taxes for the leased employees.

71.     On or about January 21, 2001, the defendants **JAROSLAW SAWCZUK, ANDOR PIKALI,** and **JOZEF BOGACKI**, caused N.S. Management Corporation of USA, Inc., to enter into an employee leasing agreement with Idaho Timber Corporation and agreed to collect and pay all payroll taxes for the leased employees.

72.     On or about April 30, 2001, the defendants, **IVAN KANIS, LUCIA KANIS** and **PAVEL PREUS**, caused S&S Commercial Services Corporation to enter into an employee leasing agreement with Perdue Farms, Inc., and agreed to collect and pay all payroll taxes for the leased employees.

73.     On or about April 30, 2001, the defendants, **IVAN KANIS, LUCIA KANIS** and **PAVEL PREUS**, caused S&S Commercial Services Corporation to enter into an employee leasing agreement with Cal-Maine Foods, Inc., and agreed to collect and pay all payroll taxes for the leased employees.

74.     On or about May 4, 2001, the defendant **PAVEL PREUS** caused  S&S Commercial Services Corporation to enter into an employee leasing agreement with Perdue Farms, Inc., and agreed to collect and pay all payroll taxes for the leased employees.

75.     On or about January 9, 2002, the defendant **PAVEL PREUS** caused S&V Commercial Services Corporation to enter into an employee leasing agreement with Mermentau Rice, Inc., and agreed to collect and pay all payroll taxes for the leased employees.

76.     On or about August 11, 2003, the defendants **JAROSLAW SAWCZUK, ANDOR PIKALI,** and **JOZEF BOGACKI**, caused Professional Services Group of USA Corporation to enter into an employee leasing agreement with Wells' Dairy, Inc., and agreed to collect and pay all payroll taxes for the leased employees.

77.     On or about September 3, 2003, the defendants, **JAROSLAW SAWCZUK** and **ANDOR PIKALI**, caused FHF Management & Commercial Services Corporation to enter into an employee leasing agreement with Goldsboro Milling Company, Inc., and agreed to collect and pay all payroll taxes for the leased employees.

All in violation of Title 18, United States Code, Section 371.

## CRIMINAL FORFEITURE

56.     The allegations of Counts 1, 2 through 24, and 25 of this Indictment are realleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants have an interest, pursuant to the provisions of Title 8, United States Code, Section 1324(b); Title 18, United States Code, Sections 982(a)(6)(A)(i), 982(a)(6)(A)(ii)(I) and/or 982(a)(6)(A)(ii)(II); Title 18, United States Code, Section 981(a)(1)(c) as incorporated by Title 28, United States Code, Section 2461; and Title 18, United States Code, Section 982(a)(1) and the procedures outlined in Title 21, United States Code, Section 853.

57.     Upon conviction of any violation of Title 18, United States Code, Sections 1341 and 1343, each defendant shall forfeit to the United States any property, real or personal, constituting or derived from proceeds traceable to such violations, pursuant to Title 18, United States Code, Section 981(a)(1)(c), as incorporated by Title 28, United Code, Section 2461.

58.     Upon conviction of any violation of Title 18, United States Code, Section 1956, each defendant shall forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property pursuant to Title 18, United States Code, Section 982(a)(1).

59.     The property subject to forfeiture includes, but is not limited to, the following:

### A.     MONEY JUDGMENT

The sum of Thirty Three-Million One Hundred and Ninety Seven-Thousand Two Hundred Six Dollars and forty-six Cents ($33,197,206.46);

B.     **REAL PROPERTY**

All that lot or parcel of land, together with its buildings, improvements, fixtures, attachments and easements located at the following locations:

1.     1654 Drew Street, Clearwater, Florida 33755, more particularly described as Grandview Terrace, Lot 102, as recorded in Plat Book 12, Page 3, of the Official Records of Pinellas County, Florida (parcel I.D. #: 11-29-15-32850-000-1020);

2.     3661 Meriden Avenue, Oldsmar, Florida, 34677, more particularly described as Lot 12, Block 18, MAP OF SECTION NO. 1 WEST OLDSMAR, as per plat thereof as recorded in Plat Book 9, Page 79, Public Records of Pinellas County, Florida;

3.     407 South Jupiter Avenue, Clearwater, Florida, more particularly described as a tract of land in the South ½ of the S.E. 1/4 of the N.E. of Section 14, Township 29 South, Range 15 East, described as follows:  Begin at the S.W. corner of Lot 4, Block "B", "Unit A", of SKYCREST SUBDIVISION according to the plat recorded in Plat Book 28, Page 4, Public Records of Pinellas County, Florida, for a point of beginning; from and from the point of beginning thus established, run Southerly along the East line of Jupiter Avenue, a distance of 80 Feet more or less the N.W. corner of the 200 foot tract of land conveyed to Fred J. Wesemeyer by deed recorded in Deed Book 1252 Page 477; run thence South 88 deg. 46 06" East a distance of 145 feet; run thence Northerly on a line parallel to said East line of Jupiter Avenue a

distance of 80 feet more or less the S.E. corner of said Lot 4, run thence Westerly along the South boundary of said Lot 4, a distance of 145 feet to the established point of beginning.

4.      Lots 21 through 28, of Block D, of HIGHLANDS GROVES, according to the Plat thereof as recorded in Plat Book 6, Page 75, of the Public Records of Pinellas County, Florida;

5.      7160 North 52 Avenue, Clearwater, Florida, more particularly described as The West 26.15 Feet of Lot 4 and East 30.00 Feet of Lot 5 Beulah Park, according to the Plat thereof as recorded in Plat Book 26, Page 70, Public Records of Pinellas County, Florida;

6.      1839 Allendale Drive, Clearwater, Florida, more particularly described as The North 75 feet of the following described land:  North 150 feet of the South 825 feet of the East 165 feet of the NW 1/4 of the SW 1/4 of Section 29. Township 29 North, Range 16 East, lying in Pinellas County, Florida; and

7.      4288 N. W. 83 Lane, Coral Springs, Florida, 33065, more particularly described as Lot 25, Block 8 of ROYAL LAND AMENDED according to the Plat thereof as recorded in Plat Book 132, Page 20, of the Public Records of Broward County, Florida.

8.      700 North Osceola Avenue, Apt. 4B-403, Clearwater, Florida, according to the Plat thereof as recorded in Plat Book 13963, Page 1789, of the Public Records of Pinellas County, Florida.

**C.      <u>AUTOMOBILES AND OTHER CONVEYANCES</u>**

1.      One (1) 2003 Kawazaki Motorcycle, Vehicle Identification No.

61

JKAZX9B173A008604, State of Florida License Plate No. 09608H;

2.    One (1) 2003 Mercedes Benz, E320W Model, Vehicle Identification No. WDBUF65J03A200815, State of Florida License Plate No. T24MHW;

3.    One (1) 1999 Harley Davidson Motorcycle, Softail Custom Bike, Vehicle Identification No.  1HD1BKL15XY054211HD, State of Florida License Plate No.  7410B; and

4.    One (1) 2004 Volkswagen, Touareg Model, Vehicle Identification No. WVGBC77L24D069162, State of Florida License Plate No.  P205E;

60.    If the property described above as being subject to forfeiture, as a result of any act or omission of any defendant,

(1)    cannot be located upon the exercise of due diligence;

(2)    has been transferred or sold to, or deposited with a third person;

(3)    has been placed beyond the jurisdiction of the Court;

(4)    has been substantially diminished in value; or

(5)    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property or to seek return of the property to the jurisdiction of the Court so that the property may be seized and forfeited.

All pursuant to the provisions of Title 8, United States Code, Section 1324(b), Title 18, United

States Code, Sections 982(a)(6)(A)(ii)(I) and/or 982(a)(6)(A)(ii)(II); Title 18, United States Code,

Section 981(a)(1)(C)as incorporated by Title 28, United States Code, Section 2461;

and Title 18, United States Code, Section 982(a)(1), and the procedures outlined in Title 21, United

States Code, Section 853(p).

A TRUE BILL

FOREPERSON

MARCOS DANIEL JIMENEZ
UNITED STATES ATTORNEY

MICHAEL BARR
TRIAL ATTORNEY
UNITED STATES DEPARTMENT OF JUSTICE
DOMESTIC SECURITY SECTION

JUDITH O'SULLIVAN
TRIAL ATTORNEY
UNITED STATES DEPARTMENT OF JUSTICE
DOMESTIC SECURITY SECTION

JEFFREY H. KAY
ASSISTANT U.S. ATTORNEY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### BOND RECOMMENDATION

DEFENDANT:   __JAROSLAW SAWCZUK_____

__Pre-Trial Detention is recommended_____
(Surety) (Recognizance) (Corp. Surety) (Cash) (Jail)
(CSB) (No Bond) (Warrant) (Summons) (Marshal's Custody)

By:   _____

JEFFREY H. KAY
ASSISTANT UNITED STATES ATTORNEY

Last Known Address:   _2107 S.E. 10th Avenue, Apt. 818, Fort Lauderdale, Florida__

_____

_____

What Facility: _____

_____

Agent(s):   _Special Agent Kenneth Murphy, Internal Revenue Service_____
(FBI)  (SECRET SERVICE)  (DEA)  (IRS) (CUSTOMS)  (__OTHER__)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### BOND RECOMMENDATION

DEFENDANT:   **ANDOR PIKALI**

   **Pre-Trial Detention is recommended**
(Surety) (Recognizance) (Corp. Surety) (Cash) (Jail)
(CSB) (No Bond) (Warrant) (Summons) (Marshal's Custody)

By: _____
JEFFREY H. KAY
ASSISTANT UNITED STATES ATTORNEY

Last Known Address:   4288 N.W. 83rd Lane, Coral Springs, Florida

What Facility: _____

Agent(s):   Special Agent Kenneth Murphy, Internal Revenue Service
(FBI) (SECRET SERVICE) (DEA) (IRS) (CUSTOMS) (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### BOND RECOMMENDATION

DEFENDANT:   **JOZEF BOGACKI** _____

    **Pre-Trial Detention is recommended**_____
(Surety) (Recognizance) (Corp. Surety) (Cash) (Jail)
(CSB) (No Bond) (Warrant) (Summons) (Marshal's Custody)

By:   _____
         JEFFREY H. KAY
        ASSISTANT UNITED STATES ATTORNEY

Last Known Address:   _1654 Drew Street, Clearwater, Florida__

_____

_____

What Facility: _____

Agent(s):   _Special Agent Kenneth Murphy, Internal Revenue Service_____
(FBI) (SECRET SERVICE) (DEA) (IRS) (CUSTOMS) (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### BOND RECOMMENDATION

DEFENDANT:   **IVAN KANIS**

**Pre-Trial Detention is recommended**
(Surety) (Recognizance) (Corp. Surety) (Cash) (Jail)
(CSB) (No Bond) (Warrant) (Summons) (Marshal's Custody)

By: _____

**JEFFREY H. KAY**
**ASSISTANT UNITED STATES ATTORNEY**

Last Known Address:   _5751 Sheridan Street, Fort Lauderdale_

_____

_____

What Facility: _____

Agent(s):   _Special Agent Kenneth Murphy, Internal Revenue Service_
(FBI) (SECRET SERVICE) (DEA) (IRS) (CUSTOMS) (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### BOND RECOMMENDATION

DEFENDANT:   **LUCIA KANIS**_____

**Pre-Trial Detention is recommended**_____
(Surety) (Recognizance) (Corp. Surety) (Cash) (Jail)
(CSB) (No Bond) (Warrant) (Summons) (Marshal's Custody)

By: _____
**JEFFREY H. KAY**
**ASSISTANT UNITED STATES ATTORNEY**

Last Known Address:   1430 Avon Lane, Fort Lauderdale, Florida

_____

_____

What Facility: _____

Agent(s):   Special Agent Kenneth Murphy, Internal Revenue Service_____
(FBI) (SECRET SERVICE) (DEA) (IRS) (CUSTOMS) (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### BOND RECOMMENDATION

DEFENDANT:   __PAVEL PREUS__

__Pre-Trial Detention is recommended__
(Surety) (Recognizance) (Corp. Surety) (Cash) (Jail)
(CSB) (No Bond) (Warrant) (Summons) (Marshal's Custody)

By:   _____
**JEFFREY H. KAY**
**ASSISTANT UNITED STATES ATTORNEY**

Last Known Address:   __6260 Wiles Raod, Apt. 203, Coral Springs, Florida__

_____

_____

What Facility: _____

Agent(s):   __Special Agent Kenneth Murphy, Internal Revenue Service__
(FBI)  (SECRET SERVICE)  (DEA)  (IRS) (CUSTOMS)  (**OTHER**)

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: JAROSLAW SAWCZUK

**Case No**: _____

Count #: 1

  Conspiracy to Commit Mail Fraud & Wire Fraud

  in violation of Title 18, United States Code, Section 371

* **Max.Penalty:** Five (5) years imprisonment; 1 year supervised release; $250,000 fine

Counts #: 2 -9, 11, 15, 17, 22

  Wire Fraud

  in violation of  Title 18, United States Code, Section 1343

**\*Max. Penalty:** Five (5) years imprisonment; 1 year supervised release; $1,000,000 fine

Counts #: 23-24

  Wire Fraud

  in violation of  Title 18, United States Code, Section 1343

**\*Max. Penalty:** Twenty (20) years imprisonment; 3 years' supervised release; $1,000,000 fine

Count #: 25

  Conspiracy to Commit Money Laundering

  in violation of  Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:** Twenty (20) years imprisonment; 3 years' supervised release;  a fine of up to not more than $500,000 or twice the value of the property involved in the transaction, which ever is greater.

Count #: 26

 Conspiracy To Obstruct and Impede the Internal Revenue Service

 in violation of  Title 18, United States Code, Section 371

**\*Max. Penalty:**Five (5) years imprisonment; 1 year supervised release; $250,000 fine

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: ANDOR PIKALI

**Case No**: _____

Count  #: 1

 Conspiracy to Commit Mail Fraud & Wire Fraud

 in violation of Title 18, United States Code, Section 371

**\* Max.Penalty:** Five (5) years imprisonment; 1 year supervised release; $250,000 fine

Counts  #: 2 -9, 11, 15, 17, 22

 Wire Fraud

 in violation of  Title 18, United States Code, Section 1343

**\*Max. Penalty:** Five (5) years imprisonment; 1 year supervised release; $1,000,000 fine

Counts  #: 23-24

 Wire Fraud

 in violation of  Title 18, United States Code, Section 1343

**\*Max. Penalty:**Twenty (20) years imprisonment; 3 years' supervised release; $1,000,000 fine

Count  #: 25

 Conspiracy to Commit Money Laundering

 in violation of  Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:**Twenty (20) years imprisonment; 3 years' supervised release;  a fine of up to not more than $500,000 or twice the value of the property involved in the transaction, which ever is greater.

Count #: 26

Conspiracy To Obstruct and Impede the Internal Revenue Service

in violation of Title 18, United States Code, Section 371

**\*Max. Penalty:** Five (5) years imprisonment; 1 year supervised release; $250,000 fine

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**: JOZEF BOGACKI

**Case No**: _____

Count #: 1

  Conspiracy to Commit Mail Fraud & Wire Fraud

  in violation of Title 18, United States Code, Section 371

* **Max.Penalty:** Five (5) years imprisonment; 1 year supervised release; $250,000 fine

Counts #: 2-3

  Wire Fraud

  in violation of Title 18, United States Code, Section 1343

*Max. Penalty:** Five (5) years imprisonment; 1 year supervised release; $1,000,000 fine

Count #: 24

  Wire Fraud

  in violation of Title 18, United States Code, Section 1343

*Max. Penalty:**Twenty (20) years imprisonment; 3 years' supervised release; $1,000,000 fine

Count #: 25

  Conspiracy to Commit Money Laundering

  in violation of Title 18, United States Code, Section 1956(h)

*Max. Penalty:**Twenty (20) years imprisonment; 3 years' supervised release;  a fine of up to not more than $500,000 or twice the value of the property involved in the transaction, which ever is greater.

Count #: 26

 Conspiracy To Obstruct and Impede the Internal Revenue Service

 in violation of  Title 18, United States Code, Section 371

**\*Max. Penalty:** Five (5) years imprisonment; 1 year supervised release; $250,000 fine

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: IVAN KANIS

**Case No**: _____

Count #: 1

  Conspiracy to Commit Mail Fraud & Wire Fraud _____

  in violation of Title 18, United States Code, Section 371 _____

* **Max.Penalty:** Five (5) years imprisonment; 1 year supervised release; $250,000 fine

Counts #: 5-17

  Wire Fraud _____

  in violation of Title 18, United States Code, Section 1343 _____

***Max. Penalty:** Five (5) years imprisonment; 1 year supervised release; $1,000,000 fine

Count #: 25

  Conspiracy to Commit Money Laundering _____

  in violation of Title 18, United States Code, Section 1956(h) _____

***Max. Penalty:**Twenty (20) years imprisonment; 3 years' supervised release;  a fine of up to not more than $500,000 or twice the value of the property involved in the transaction, which ever is greater.

Count #: 26

  Conspiracy To Obstruct and Impede the Internal Revenue Service _____

  in violation of Title 18, United States Code, Section 371 _____

***Max. Penalty:**Five (5) years imprisonment; 1 year supervised release; $250,000 fine

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: LUCIA KANIS

**Case No**: _____

Count #: 1

  Conspiracy to Commit Mail Fraud & Wire Fraud

  in violation of Title 18, United States Code, Section 371

**\* Max.Penalty:** Five (5) years imprisonment; 1 year supervised release; $250,000 fine

Counts #: 5-17

  Wire Fraud

  in violation of Title 18, United States Code, Section 1343

**\*Max. Penalty:** Five (5) years imprisonment; 1 year supervised release; $1,000,000 fine

Count #: 25

  Conspiracy to Commit Money Laundering

  in violation of Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:**Twenty (20) years imprisonment; 3 years' supervised release; a fine of up to not more than $500,000 or twice the value of the property involved in the transaction, which ever is greater.

Count #: 26

  Conspiracy To Obstruct and Impede the Internal Revenue Service

  in violation of Title 18, United States Code, Section 371

**\*Max. Penalty:**Five (5) years imprisonment; 1 year supervised release; $250,000 fine

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: PAVEL PREUS

**Case No**: _____

Count #: 1

 Conspiracy to Commit Mail Fraud & Wire Fraud

 in violation of Title 18, United States Code, Section 371

\* **Max.Penalty:** Five (5) years imprisonment; 1 year supervised release; $250,000 fine

Counts #: 10 -14,16-21

 Wire Fraud

 in violation of  Title 18, United States Code, Section 1343

\***Max. Penalty:** Five (5) years imprisonment; 1 year supervised release; $1,000,000 fine

Count #: 23

 Wire Fraud

 in violation of  Title 18, United States Code, Section 1343

\***Max. Penalty:**Twenty (20) years imprisonment; 3 years' supervised release; $1,000,000 fine

Count #: 25

 Conspiracy to Commit Money Laundering

 in violation of  Title 18, United States Code, Section 1956(h)

\***Max. Penalty:**Twenty (20) years imprisonment; 3 years' supervised release;  a fine of up to not more than $500,000 or twice the value of the property involved in the transaction, which ever is greater.

Count #: 26

 Conspiracy To Obstruct and Impede the Internal Revenue Service

 in violation of Title 18, United States Code, Section 371

**\*Max. Penalty:**Five (5) years imprisonment; 1 year supervised release; $250,000 fine

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**05· 60010**

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. _____ |
| vs. | **CR-MARRA** |
| JAROSLAW SAWCZUK, | **CERTIFICATE OF TRIAL ATTORNEY\*** |
| ANDOR PIKALI, | **MAGISTRATE JUDGE** |
| JOZEF BOGACKI, | **SELTZER** |
| IVAN KANIS, | |
| LUCIA KANIS, | |
| PAVEL PREUS, | |
| **Defendants.** | |

**Superseding Case Information:**

New Defendant(s)          Yes _____   No _____
Number of New Defendants          _____
Total number of counts          _____

**Court Division:** (Select One)

_____ Miami          _____ Key West
__X__ FTL          _____ WPB          _____ FTP

I do hereby certify that:

1.      I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.      I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.      Interpreter:          (Yes or No)          YES
        List language and/or dialect          Hungarian, Slovak, Czech, Polish

4.      This case will take          20 days

5.      Please check appropriate category and type of offense listed below:
        (Check only one)                              (Check only one)

| | | | | |
|---|---|---|---|---|
| I | 0 to 5 days | _____ | Petty | _____ |
| II | 6 to 10 days | _____ | Minor | _____ |
| III | 11 to 20 days | __X__ | Misdem. | _____ |
| IV | 21 to 60 days | _____ | Felony | __X__ |
| V | 61 days and over | _____ | | |

6.      Has this case been previously filed in this District Court?  (Yes or No)          NO
If yes:
Judge: _____          Case No. _____
(Attach copy of dispositive order)
Has a complaint been filed in this matter?          (Yes or No)          _____
If yes:
Magistrate Case No.          _____
Related Miscellaneous numbers:          _____
Defendant(s) in federal custody as of          _____

Defendant(s) in state custody as of          _____
Rule 20 from the _____          District of _____
Is this a potential death penalty case? (Yes or No) NO

7.      Does this case originate from a matter pending in the U.S. Attorney's Office prior to
        April 1, 2003?          __X__ Yes          _____ No

8.      Does this case originate from a matter pending in the U. S. Attorney's Office prior to
        April 1, 1999?          _____ Yes          __X__ No
        If yes, was it pending in the Central Region?          Yes _____          No __X__

9.      Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to  October 14,
        2003?          _____ Yes          __X__ No

10.     Does this case originate from a matter pending in the Narcotics Section (Miami) prior to
        May 18, 2003?          _____ Yes          __X__ No

_____
MICHAEL BARR
TRIAL ATTORNEY - Department of Justice